525 P.2d 898

**Nestor PROVENCIO, Appellee,**

**v.**

**NEW JERSEY ZINC CO., Appellant.**

**No. 1204.**

Court of Appeals of New Mexico.

June 5, 1974.

Rehearing Denied June 17, 1974.

Certiorari Denied July 18, 1974.

Edward E. Triviz, Las Cruces, for appellant.

Patricio S. Sanchez, Serna & Sanchez, Silver City, for appellee.

## OPINION

LOPEZ, Judge.

On April 4, 1969, the claimant was involved in an accident arising out of and in the course of his employment. He fell fifteen feet, landed on his back and rolled another seventy-five feet down a slope. The defendant-employer paid workmen's compensation disability benefits and supplied medical services until December 11, 1969, when further assistance was terminated.

Claimant commenced this action on January 15, 1970, and was awarded total permanent disability and attorney's fees. The New Mexico Health and Social Services Department had intervened pursuant to § 13–1–20.1, N.M.S.A.1953 (Repl.Vol. 3, Supp.1973). The Department was awarded judgment for certain expenses incurred by providing medical assistance to the claimant.

The employer's appeal requires discussion of four issues: (1) causation; (2) liability for medical services; (3) due process; and (4) attorney's fees. We affirm the awards.

*Causation*

 Dr. Emmett Altman, an orthopedic surgeon, testified that as a medical probability, claimant's disability resulted from the accident. The employer contends that Dr. Altman's opinion was speculative, based merely upon a history of subjective complaints and inherently improbable. The claim is that such an opinion, merely reciting "magic words," cannot support an award.

Dr. Altman's testimony reveals a sufficient basis for his conclusion. He testified that he received from the claimant a history of the accident and a history of pain since the accident. He concluded that the conservative therapy employed by other physicians for over one year had not improved the claimant's condition. Therefore, he undertook surgery. He removed, ". . . a very positive necrotic big bulging disc at L5 S1. . . . [I]t was pressing against the nerve root, causing pain, muscle spasm and limitation of motion and these paresthesias. . . ." The post-operative pathology report confirmed that abnormal intervertebral disc tissue from the L5–S1 interspace was removed from the claimant. After surgery Dr. Altman testified that the claimaint's prognosis had improved considerably.

 The employer makes a number of attacks upon the causal chain outlined above. It contends that the testimony of Dr. Altman is inherently improbable because it contradicts known physical facts. The employer points to undisputed evidence that there were no objective signs of pathology involving the lumbosacral region found by any of the physicians who examined the claimant in the year following the accident. We are asked to adopt Dr. Max Gingrich's conclusion that given this lack of early clinical findings, a disc herniation could not have been produced at the time of Dr. Altman's diagnosis without additional trauma. To do so would ignore conflicting evidence. Dr. Altman testified that the late discovery of clinical findings about the disc herniation is due to the fact that it is a progressively developing condition. These conflicts between the experts must be resolved by the trial court. Wood v. Citizens Standard Life Insurance Company, 82 N.M. 271, 480 P.2d 161 (1971); Gallegos v. Kennedy, 79 N.M. 590, 446 P. 2d 642 (1968); Torres v. Kennecott Copper Corporation, 76 N.M. 623, 417 P.2d 435 (1966).

The employer also questions the necessity for the surgery and the conclusion that the disc was herniated. The necessity or lack of necessity for surgery should have been apparent after the operation was completed. If there is sufficient evidence to support the postoperative conclusion that claimant had suffered a herniated disc, we believe the trial court was justified in finding that surgery was necessary.

Dr. Altman interpreted the pathology report as supporting his conclusion that the claimant had suffered an operable herniated disc. The employer challenges Dr. Altman's interpretation on the grounds that the pathologist's diagnosis was "lumbosacral disc disease," not a herniated disc. A major difficulty with this argument is that "lumbosacral disc disease" was the *preoperative* diagnosis. The pathologist made no conclusions apparent from this record as to whether or not the disc was herniated. It merely confirmed that the tissues removed were abnormal. This conclusion is certainly not inconsistent with

either the preoperative diagnosis or the observations of Dr. Altman that the disc was indeed herniated. The need for surgery and the conclusion of a herniated disc is substantially supported by Dr. Altman's testimony. The doctor's credibility was a matter to be determined by the trial court.

The employer finally argues that Dr. Altman's testimony should be disregarded because it was vague, evasive and inconsistent. The employer does not support the first two of these allegations by references to the record. We do not feel that Dr. Altman's testimony was contradictory in any material respect. Even if it was, conflicts in the testimony are to be resolved by the trial court. Hughes v. Walker, 78 N.M. 63, 428 P.2d 37 (1967); Payne v. Tuozzoli, 80 N.M. 214, 453 P.2d 384 (Ct. App.1969).

### Liability for medical treatment

The employer argues that there is insufficient evidence to support the trial court's FINDINGS OF FACT NO. 4 and 6, set out below:

"4. The defendant did terminate plaintiff's compensation benefits and medical services in December, 1969. Thereafter defendant did not offer nor [sic] provide medical services during a period medical and hospital services were necessary.

" . . .

"6. The Intervenor should have judgment herein for the sum of $1,721.54 for the [medical and hospital] services paid for by Intervenor. The Court does find these services were necessary, essential, reasonable and relevant herein."

The employer claims that it is not liable for Dr. Altman's services since it provided adequate services and since no demand was made for them.

The issue is governed by § 59–10–19.1, N.M.S.A.1953 (Vol. 9, pt. 1, Supp.1965), which states:

" * * * A. After injury, and continuing as long as medical or surgical attention is reasonably necessary . . . ,

the employer shall furnish all reasonable surgical, medical . . . and hospital services and medicine, not to exceed the sum of five thousand dollars ($5,000), unless the workman refuses to allow them to be so furnished. * * *

" * * *

"D. In case the employer has made provisions for, and has at the service of the workman at the time of the accident, adequate surgical, hospital and medical facilities and attention, and offers to furnish these services during the period necessary, then the employer shall be under no obligation to furnish additional surgical, medical or hospital services or medicine than those so provided. * * *"

The trial court's finding that the employer terminated claimant's medical services in December, 1969, is supported by substantial evidence. The amount awarded the intervenor for medical and hospital services is for costs incurred in the treatment of claimant subsequent to his termination.

We do not have a situation where the employer is offering medical services and the claimant refuses the services offered. Accordingly, the following cases are inapplicable: Valdez v. McKee, 76 N.M. 340, 414 P.2d 852 (1966); Beckwith v. Cactus Drilling Corporation, 84 N.M. 565, 505 P.2d 1241 (Ct.App.1972); Wuenschel v. New Mexico Broadcasting Corp., 84 N.M. 109, 500 P.2d 194 (Ct.App.1972); Gregory v. Eastern New Mexico University, 81 N.M. 236, 465 P.2d 515 (Ct.App.1970).

We recognize that Dudley v. Ferguson Trucking Company, 61 N.M. 166, 297 P.2d 313 (1956), refers to a "request or demand" for medical services before the employer can be held liable for those services. However, *Dudley* does not discuss the demand requirement in the factual context of this case. Here the employer terminated medical treatment *prior to* the time when the claimant obtained the services for which he seeks to hold the employer liable.

As we understand § 59–10–19.1(D), supra, once the employer provides for medical services and offers those services to a workman, the employer is not liable for services other than those offered absent a demand or request for the additional services. But where the employer terminates the services previously offered, the employer at that point, " * * * has failed to provide such services. * * * " Valdez v. McKee, supra. Thereafter, no request or demand for further services is necessary.

This view is supported by the following cases: Atlantic & Gulf Stevedores, Inc. v. Neuman, 440 F.2d 908 (5th Cir. 1971); McCoy v. Industrial Accident Commission, 64 Cal.2d 82, 48 Cal.Rptr. 858, 410 P.2d 362 (1966); Finn v. Harrison, 255 S. W.2d 93 (Mo.App.1953). Accordingly, we hold that the employer cannot avoid liability for the medical expenses in this case on the basis that claimant failed to request or demand that medical services be provided by the employer after it declared that it would provide no additional services.

Claimant's comments to his foreman in the conversation at which medical services were terminated would, in our opinion, be a sufficient demand if a demand were required. However, no demand was required under the facts of this case.

Apart from the "demand" question, the employer is not liable for the medical services unless they were reasonably necessary. Section 59–10–19.1(A) and (D), supra. Dr. Altman's testimony is substantial evidence that the services were reasonably necessary.

### Due Process

The employer raises certain questions concerning the conduct of claimant's counsel during this litigation. It claims that the actions of counsel amount to a denial of due process. No claim of denial of due process was made to the trial court. Accordingly, we do not review the issues presented by the employer's contention. See Gurule v. Albuquerque-Bernalillo Co.

Economic Op. Bd., 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972).

### Attorney's fees

The attorney's fee claim has two parts. First, the employer claims an award of attorney's fees in this case violates due process because the fees amount to "extra compensation to assistant district attorney for services otherwise required by official duties." The employer's theory is that counsel's activities in getting claimant to welfare officials, and his advice to those officials to refer claimant to Dr. Altman, were no more than the performance of his official duties as assistant district attorney. Nothing shows attorney's fees were awarded for these activities.

The employer's second attack on the attorney's fee award is directed to the amount awarded—$4,500.00. The employer asserts the award was an abuse of discretion because, " . . . other than accomplishing the referral . . . to Dr. Emmett Altman . . . there is no evidence of any benefit inuring to the claimant by the services of plaintiff's counsel." This is factually erroneous. The employer had terminated compensation and medical services. Both were obtained through court proceedings at which counsel represented claimant.

We find nothing indicating the trial court failed to follow the requirements of § 59–10–23(D), N.M.S.A.1953 (Repl.Vol. 9, pt. 1), in fixing the amount of the attorney's fee in this case. See Keyser v. Research Cottrell Company, 84 N.M. 173, 500 P.2d 997 (Ct.App.1972). Even when made pursuant to the statute, the attorney's fee award is reviewable for abuse of discretion. See Adams v. Loffland Brothers Drilling Company, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). The employer points to nothing amounting to an abuse of discretion. Cf. Salazar v. Kaiser Steel Corporation, 85 N.M. 254, 511 P.2d 580 (Ct.App.1973).

Claimant is awarded $1,750.00 for the services of his attorney in this appeal.

There being no error, the judgment is affirmed.

It is so ordered.

WOOD, C. J., and HERNANDEZ, J., concur.