616 P.2d 432

Sarah A. LUJAN, Plaintiff–Appellee,

v.

CIRCLE K CORPORATION, Employer and New Hampshire Insurance Company, Insurer, Defendants–Appellants.

No. 4458.

Court of Appeals of New Mexico.

July 31, 1980.

Jerrald J. Roehl, Ronald W. Henkel, Jerrald J. Roehl & Associates, Albuquerque, for defendants–appellants.

Charles G. Berry, Marchiondo & Berry, Albuquerque, for plaintiff–appellee.

## OPINION

SUTIN, Judge.

This is a workmen's compensation case. The parties stipulated that plaintiff was totally disabled from March 31, 1977, the date of injury, to January 9, 1979, by reason of an injury that occurred within the course and scope of her employment. Judgment was entered that total disability continued to the time of trial "and shall continue for an indefinite period of time." The court ordered defendants to pay plaintiff compensation from January 9, 1979, to the time of trial and continue to make such payments until the further order of the court; "That this matter shall be brought before the Court for reconsideration of this matter not later than six months from the date hereof," November 28, 1979.

Defendants appeal. We affirm on the judgment for compensation and reverse on the assessment of costs.

Defendants challenged finding of fact No. 4. It reads:

The plaintiff has established by expert medical testimony that as a reasonable medical probability that she suffered a psychological injury as a direct and proximate result of the robbery, abduction, assault, rape and sodomization which occurred within the course and scope of her employment on March 31, 1977. As a further direct and proximate result thereof she has been since that date and remains to the present time wholly unable to perform the usual tasks in the work she was performing at the time of her injury and is wholly unable to perform any work for which she is fitted by age, education, training, general physical and mental capacity, and previous work experience.

Two issues of fact are raised: (1) whether plaintiff established as a reasonable medical probability that she suffered a psychological injury; and (2) whether as a proximate result thereof she was "wholly unable to perform any work for which . . . [she] is fitted." Section 52–1–24, N.M.S.A. 1978. For the latest discussion of this issue, see *Anaya v. New Mexico Steel Erectors, Inc.*, 94 N.M. 370, 610 P.2d 1199 (1980). This issue is called the second prong test of total disability. *Medina v. Wicked Wick Candle Co.*, 91 N.M. 522, 577 P.2d 420 (Ct. App.1977).

A. *Plaintiff established a reasonable medical probability.*

■ Dr. John R. Graham, a physician and psychiatrist, testified that his initial contact

with plaintiff began April 6, 1977, at the Albuquerque Center for Psychotherapy. Subsequently, she was seen on April 14, 23 and 26 when a diagnostic evaluation was completed. Dr. Graham continued to see her on a regular basis for ongoing treatment for her problems.

A detailed history was obtained from Plaintiff. With respect to any work before employment with Circle K, she worked for the Albuquerque school system from September, 1975 to May, 1976 in food preparation and serving for the children at school. She left that job, and on July 4, 1976, she worked the graveyard shift for Circle K to look after her responsibilities to her children. She had no particular major medical problems, no accidents, no head injuries and no other gynocological history other than four pregnancies that resulted in four children who lived with her at home.

Plaintiff worked as a clerk in the Circle K store.

Dr. Graham described three different diagnosis: (1) depression with anxiety which was post-traumatic in origin; (2) personality style disorder which was post–traumatic; and (3) an adult situational reaction.

On January 10, 1978, plaintiff was admitted to the Bernalillo County Medical Center for a week, suffering from some very severe problems which impaired her vision. These problems were related to the unfortunate event that occurred on March 31, 1977. Her symptoms were compatible with what is called "conversion reaction." She had double vision. She could not focus. She had very severe headaches and blurring in her eyes. From January 9, 1979, to the time of trial on August 7, 1979, Dr. Graham saw plaintiff from 13 to 16 times.

The doctor and plaintiff worked toward plaintiff obtaining employment. Plaintiff made a reasonable effort in this respect, making multiple applications at a variety of places, taking examinations and other tests. She was frustrated because she was not hired and became quite.desperate. Finally, through the CETA program (Comprehensive Employment Training Administration) she was able to obtain employment as a receptionist and secretary at the North City Yard of the City of Albuquerque in April, 1979.

The physical problems she had led to a diagnosis of endometria cancer. Surgery took place in May and June, 1979. Plaintiff was physically unable to stay on the job. Indeed, she had psychological problems before, during and after her employment until July of 1979 when she was cleared by another doctor. She reapplied to the CETA program and hoped to hear from the City. Dr. Graham did not believe she would be hired back.

Dr. Graham then detailed the psychological symptoms during her employment at the North City Yard. A recitation of them are unnecessary. They are extensive and clearly detailed. These symptoms were related to her work and interfered with her performance. After a review of 13 exhibits, including four reports by Dr. Richard T. Rada, defendants' physician and psychiatrist, Dr. Graham rendered an opinion that plaintiff was substantially impaired in an amount of 82%. This opinion was explained extensively based upon a psychiatric disorder. His guidelines were taken from Evaluation of Permanent Impairment, a 1977 publication of the American Medical Association. In his opinion, Dr. Graham stated that this impairment will persist for an indefinite period of time. It was permanent.

Dr. Graham was asked whether plaintiff was able to perform any work for which she is suited by age, education, training, general physical and mental capacity, and previous work experience, the second prong test. Dr. Graham answered, "She is disabled." She would be unable to work at the present time and so long as this impairment continued.

Dr. Graham's testimony unequivocally established the validity of finding No. 4, *supra.*

Defendants respond that plaintiff could not be totally disabled from April 3 to April 30, 1979, because she earned $1.18 more per hour while employed by the City

than her per hour earnings while working for Circle K. While earning capacity may be evidence admissible on the question of disability, see *Anaya v. New Mexico Steel Erectors, Inc., supra*, the primary test of disability is capacity to perform work. *Medina v. Zia Company*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975). Dr. Graham explained plaintiff's intense suffering during her April, 1979 employment with the City. There is evidence that plaintiff was not in fact qualified for the position with the City but was placed in that position under a government training program to help the City avoid losing the government funding. During this employment, plaintiff worked only 8 days out of a possible 19.

■ *Medina v. Wicked Wick Candle Co., supra*, does not support defendants. There the evidence was insufficient to sustain a finding that claimant was totally disabled as a result of an accident that occurred on April 14, 1972. She was gainfully employed as a clerk–typist, one who was a "retrainee," from February 1, 1974 to the time of trial. In the instant case, plaintiff's 8 days of work for the City in a job she was not qualified to perform does not translate total disability into partial disability.

Defendants expended much time and effort in seeking to establish that plaintiff failed to support a finding of total disability by a "preponderance of the evidence." Some contradictory testimony was set forth. Reliance was had on *Mascarenas v. Kennedy*, 74 N.M. 665, 668, 397 P.2d 312 (1964) wherein the court said:

. . . The rule of liberal construction does not relieve a claimant of the burden of establishing his right to compensation by a preponderance of the evidence, nor does it permit a court to award compensation where the requisite proof is absent.

. . .

■ "By a preponderance of the evidence" is meant "substantial support in the evidence for the findings." "That being true," the court said, "the fact that there may have been contrary evidence which would have supported a different finding or conclusion does not permit this court, on appeal, to weigh the evidence, [citations omitted] or speculate as to what the trial court might have done." [Id. 668–669, 397 P.2d 314.]

To support their position, defendants claim that Dr. Graham's testimony should be disregarded as inherently improbable. It was not, as that phrase has been defined, see *State v. Boyd*, 84 N.M. 290, 502 P.2d 315 (Ct.App.1972). Plaintiff's argument is that this testimony was not worthy of belief because inherently unreliable. This argument surrounds the question of whether cancer was causally connected with the tragic event. Dr. Graham said:

I cannot state with sufficient scientific base, but in my opinion, and with the information I have available to me at this time, I would have to suggest that it was related.

■ The doctor stated his opinion was based on a "high probability," explained how he came to that opinion, see Evidence Rule 705, and testified that his opinion at trial was consistent with his deposition testimony. The fact that he testified contrarywise by deposition does not make his testimony at trial inherently unreliable. Where medical testimony in a workmen's compensation case is conflicting, the trial court's determination will be affirmed. *Renfro v. San Juan Hospital, Inc.*, 75 N.M. 235, 403 P.2d 681 (1965).

■ We have carefully noted the strong arguments made by defendants. A recitation of the applicable rules that reject the defendants' position would be superfluous. We note that the excluded exhibits, of which defendants complain, were cumulative of Dr. Graham's testimony that plaintiff sought work. Exclusion was not error because they were cumulative. Evidence Rule 403.

B. *Trial court erred in assessment of costs.*

Plaintiff submitted a cost bill of $1,039.08. Defendants filed written objections. After a discussion of costs by opposing lawyers, the court disallowed plaintiff

costs of $150.71 expended for preparation of Exhibits 1–13. An Order was entered that plaintiff be granted judgment for costs in the sum of $888.37.

A hearing was held and the Order entered.

Costs were assessed for:

Service of Subpoenas

| | | |
|---|---|---|
| December 1978 | – | $ 10.40 |
| January 1979 Trial | – | 160.00 |
| July 1979 Setting | – | 231.77 |

Witness Fees

| | | |
|---|---|---|
| January 1979 Trial | – | $ 72.00 (three witnesses) |
| July 1979 Trial | – | 136.00 (five witnesses) |

| | | |
|---|---|---|
| Transcript made of Stipulation Agreement | – | $ 10.40 |
| Copies of Medical Records from BCMC | – | $ 65.00 |
| Examination by Dr. Shirley Simms | – | $202.80 |

Section 52–1–35(B), N.M.S.A. 1978 provides in pertinent part:

No costs shall be charged, taxed or collected by the clerk except fees for witnesses who testify under subpoena. . .

In workmen's compensation cases, defendants are not liable for costs, jury fees, filing or docket fees. "If the plaintiff paid them he did so on his own volition and may not recover same from defendants." *Reck v. Robert E. McKee General Contractors*, 59 N.M. 492, 503, 287 P.2d 61 (1955). Neither are defendants liable for costs of fees of witnesses who did not testify under subpoena. The record does not show any hearing or trial in January or July, 1979, at which witnesses testified under subpoena and for which costs of witness fees and subpoenas could be taxed.

None of the costs taxed against defendants were valid.

We do not agree that defendants' appeal was frivolous or for the sole purpose of delay, and decline plaintiff's request to assess penalty under § 39–3–27, N.M.S.A. 1978. *Genuine Parts Company v. Garcia*, 92 N.M. 57, 582 P.2d 1270 (1978).

Plaintiff filed a motion to dismiss the appeal and a brief in support thereof. The motion was denied. Plaintiff then filed a motion to submit this case on briefs filed.

Plaintiff's brief in support of motion to dismiss was accepted as plaintiff's answer brief. This motion was granted. Plaintiff is awarded an attorney fee of $1,250.00 for services rendered in this appeal.

We affirm the Judgment of the trial court in its award of compensation benefits and attorney fees. We reverse the Order of the court that awarded plaintiff costs. The court shall withdraw its Order and enter an Order that the plaintiff's cost bill is denied. Defendants shall pay the costs of this appeal.

IT IS SO ORDERED.

WOOD, C. J., and ANDREWS, J., concur.