693 P.2d 583

**Ariel SALCIDO, Petitioner,**

**v.**

**TRANSAMERICA INSURANCE GROUP**
**and Southwest Lath & Plaster, Inc.,**
**Respondents.**

**No. 15108.**

Supreme Court of New Mexico.

Jan. 11, 1985.

Rehearing Denied Jan. 23, 1985.

218

Lorenzo A. Chavez, Martin J. Chavez, Albuquerque, for petitioner.

Bradley & McCulloch, Sarah M. Bradley, Albuquerque, for respondents.

## OPINION

SOSA, Senior Justice.

The trial court granted summary judgment in favor of defendant insurance company in a workmen's compensation suit to determine the weekly benefits due in a claim for total permanent disability. The Court of Appeals affirmed. We granted certiorari and reverse.

Three issues are raised on appeal: (1) whether benefits should be computed on the amount the worker was earning at the time of the accident; (2) whether the worker was precluded as a matter of law from receiving disability benefits during the time he earned wages; and (3) whether the worker's medical fees for chiropractic treatment should be paid by the defendant.

**Computation of Benefits**

Under the Workmen's Compensation Act, NMSA 1978, Sections 52–1–1 to 52–1–69 (Orig.Pamp. and Cum.Supp.1984), the general rule is that a worker's compensation benefits will be computed on the basis of his average weekly wage "at the time of the accident." NMSA 1978, § 52–1–20. This statute has an exception which allows benefits to be paid at a lower rate when there is an "employer's necessity temporarily requiring him to pay extraordinary high wages." NMSA 1978, § 52–1–20(D).

It is undisputed that worker Salcido received serious back and brain injuries while working. He was employed as a plasterer by defendant S.W. Lath & Plaster Company. The work site, a federal government construction project, was on an Indian Pueblo near Santa Fe. The *Davis-Bacon Act*, 40 U.S.C. § 276a et seq. (1982), regulated the hourly wage paid to the construction workers.

Salcido was receiving a $13.58 hourly wage at the time of injury. Five months earlier he had received a $6.00 hourly wage for plastering for the same subcontractor at an off-Pueblo site in Albuquerque.

Defendant insurance company computed the worker's compensation benefits on a $6.00 hourly wage and not the $13.58 wage the worker was earning "at the time of the accident," pursuant to the hourly wage computation of NMSA 1978, Section 52–1–20(B)(4). The statute defines the term "wages" to be used in computing compensation benefits as the "money rate at which the services rendered are recompensed under the *contract of hire in force at the time of the accident.*" NMSA 1978, § 52–1–20(A). (Emphasis added). *See also Gilliland v. Hanging Tree, Inc.*, 92 N.M. 23, 582 P.2d 400 (Ct.App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978).

To support its position of computing benefits on a $6.00 hourly wage, defendant claims the Pueblo wages were within the exception created by NMSA 1978, Section 52–1–20(D), which provides:

that in case such earnings have been unusually large on account of the employer's necessity temporarily requiring him to pay extraordinary high wages, such average weekly earnings shall be based upon the usual earnings in the same community for labor of the kind the workman was performing at the time of the injury.

We have not previously interpreted this exception to the "wage earned at the time of the accident" rule. Section 52–1–20(D) was meant to cover exigent circumstances—for example, payment of necessary overtime to meet a deadline. It was not meant to apply to federally regulated wages *foreseen* at the time the contract was negotiated and provided for initially during the calculation of the construction bid. While the wages were higher on the

Pueblo than the average in the general area, they were not "temporarily" high as to that particular construction project. Therefore, $13.58 is the correct hourly wage to be used as the basis of computing weekly compensation benefits. NMSA 1978, § 52–1–20(B)(4).

## Benefit Preclusion When Working

Approximately one month after the accident, the worker returned to work for two weeks at a $6.00 hourly wage. He received no disability benefits during this time. The worker claims he is entitled to benefits for this interval because he was subject to convulsions and unable to perform his normal duties without help. Therefore, the worker argues, he remained disabled during that two week period. He relies on *Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App.1981), which held that the primary test of disability is the capacity to perform work, not a worker's wage-earning ability.

■ We agree with that line of cases which states that the primary test of disability is the worker's *capacity to perform work. Quintana v. Trotz Construction Co.*, 79 N.M. 109, 440 P.2d 301 (1968) (overruled in part on other grounds); *Bufalino v. Safeway Stores, Inc.*, 98 N.M. 560, 650 P.2d 844 (Ct.App.1982); *Smith v. Trailways Bus System*, 96 N.M. 79, 628 P.2d 324 (Ct.App.1981). *Klindera v. Worley Mills, Inc.*, 96 N.M. 743, 634 P.2d 1295 (Ct.App.1981); *Chavira v. Gaylord Broadcasting Co.*, 95 N.M. 267, 620 P.2d 1292 (Ct.App.), *cert. denied*, 95 N.M. 299, 621 P.2d 516 (1980); *Perez v. International Minerals and Chemical Corp.*, 95 N.M. 628, 624 P.2d 1025 (Ct.App.), *cert. denied*, 95 N.M. 669, 625 P.2d 1186 (1981); *Lujan v. Circle K Corp.*, 94 N.M. 719, 616 P.2d 432 (Ct.App.1980); *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180, (Ct.App.) *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1975); *Trujillo v. Tanuz*, 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973); *Adams v. Loffland Brothers Drilling Co.*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970).

■ The definition of disability under the workmen's compensation statute contains two tests: "(1) the workman must be totally or partially unable to perform work he was doing at the time of the injury, AND (2) the worker must be wholly or partially unable to perform ANY work for which he is fitted." *Medina v. Zia Co.*, 88 N.M. at 616, 544 P.2d at 1181, citing *Quintana v. Trotz.*

■ Here we have no evidential findings as to the worker's capacity to perform work. Additionally, we do not know if a comparable or similar job was available on the Pueblo construction site at a $13.58 hourly wage. *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.), *cert. denied* 93 N.M. 683, 604 P.2d 821 (1979). Under *Aranda*, the employer has a duty to make a reasonable effort to help the employee obtain a comparable or similar job at his former employment before aiding him to find other employment. *Id.*

We remand this issue for a hearing on the worker's capacity to perform work and the availability of work on the Pueblo job site.

## Medical Bills

A third issue involves the defendant's alleged refusal to pay the worker's chiropractic medical bills. Our courts have stated that the employer's mere passive willingness to furnish medical services is not sufficient to satisfy its statutory obligation to provide them. *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

Under the recently enacted medical provision, NMSA 1978, Section 52–4–1(A)(3) (Cum.Supp.1984), a licensed chiropractor is within the definition of a "health care provider". Furthermore, Subsection (C) of the statute provides that payment to a recognized Subsection (A) health care provider

shall not be denied when such service is rendered by the health care provider, provided such treatment is related to the injury and is reasonable and necessary.

*Nothing* contained in the Workmen's Compensation Act * * * shall be construed to deny or limit the right of a workman * * * to seek the services of a health care provider.

NMSA 1978, § 52–4–1 (Cum.Supp.1984) (emphasis added).

 Under our reading of Sections 52–4–1(A) and (C), the worker here is eligible to receive and have the carrier pay for the services of the chiropractor if the care was related to a compensable disability and such services are deemed reasonable and necessary. These are questions of fact to be determined by the trial court.

Summary judgment is reversed and the cause is remanded to the trial court with directions to set the matter for trial.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.

RIORDAN and STOWERS, JJ., dissent.

STOWERS, Justice, dissenting.

We dissent.

The majority misinterpret NMSA 1978, Section 52–1–20, and ignore the facts of this case. The record shows that in 1981 Salcido worked 10 months for Southwest Lath & Plaster, Inc. (Southwest) and that he was paid a permanent wage rate of $6 per hour by the end of the 10 month period. Salcido quit working for Southwest in October, 1981. When he returned to work on April 2, 1982, he was sent to work on a federal project which required a wage rate of $13.58 per hour pursuant to the Davis-Bacon Act, 40 U.S.C. Sections 276a to 276a–5 (1982). Southwest's subcontracting job on the federal project and Salcido's work on that project were only temporary and ended 3 days after Salcido's accident. In fact, during the period from April 2 to May 5, the date of the accidental injury, Salcido worked in Albuquerque for two days at his permanent wage rate of $6 per hour. He also worked at the $6 per hour rate when he returned to work one month after the accident for a two week period.

Thus, the facts show that Salcido was "recompensed under the contract of hire in force at the time of the accident," under NMSA 1978, Section 52–1–20(A), at a permanent wage rate of $6 per hour, and that the artificially high wage rate of $13.58 per hour was only temporary.

Under the majority's view, the wage received at the time of an accidental injury determines the average weekly wage rate. This view fails to recognize that the contract for hire depends on the agreement between the employer and employee at the time of hiring. If Salcido's contract for hire was at a wage rate of $13.58 per hour, then he would have been paid that amount whether he worked on the federal project or away from the project in Santa Fe or Albuquerque. The facts of this case show that Salcido recognized and accepted $6 per hour as his permanent compensation under his contract for hire with Southwest.

The majority misconstrue Section 52–1–20(D). Rather than questioning whether $13.58 per hour is a "temporarily" high wage rate compared to the $6 per hour rate, the majority misconstrue Subsection (D) to render it inapplicable. This Court should not adopt an interpretation which would nullify a provision of a workmen's compensation statute. *See Transamerica Insurance Co. v. Sydow,* 97 N.M. 51, 636 P.2d 322 (Ct.App.1981). By redefining "temporarily" high to mean high as a result of "exigent circumstances," the majority subvert the legislative intent of the subsection by failing to give plain and unambiguous words of the subsection the literal reading which they merit. *See Atencio v. Board of Education,* 99 N.M. 168, 655 P.2d 1012 (1982). The $13.58 per hour wage rate was temporary and only applicable when Salcido worked on the federal project. Also, whether or not the wage rate paid is "foreseeable" by Southwest is not a requirement of Section 52–1–20(D), and is not part of the law.

The "community" referred to in Section 52–1–20(D) is not limited to the community where work was performed at the time of the accident. The concept of "community"

in Subsection (D) extends to all places where an employee works. In this case, Salcido worked in Albuquerque, Santa Fe, Espanola, and at the federal project on the Indiana Pueblo. Thus, a determination under Section 52-1-20(D) of the usual earnings in the same community for the same kind of labor must include earnings for labor performed at each non-federal work site because Salcido's "community" for work purposes included each of these locations.

The majority also misconstrue the concept of "any work" in the statutory definitions of "total disability" and "partial disability" in determining whether Salcido is precluded from receiving benefits while working. *See* NMSA 1978, §§ 52-1-24 and -25. "Any work" means a workman's ordinary employment or other employment approximating the same livelihood the workman might be expected to follow under the circumstances. *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). Neither the statute nor the case law require that the employer put the employee to work at the *same* job site, or at a non-permanent wage rate, which existed at the time of the accident. In this case, the majority's remand for a determination of the availability of work on the Pueblo job site is contrary to the requirements of the statute. It is also impractical under the facts because work at the Pueblo job site ended 3 days after Salcido's injury. Salcido worked at his regular job and was compensated at his permanent wage rate of $6 per hour for his two weeks of post-injury work, thus, he is precluded from receiving workmen's compensation benefits for that two-week period.

Finally, the majority are incorrect in deciding whether Southwest is liable for its alleged refusal to pay the worker's chiropractic bills. Under NMSA 1978, Section 52-1-49(B), once an employer provides for medical services and offers those services to a workman, the employer is not liable for services other than those offered absent a demand or request for additional

services. *Provencio v. New Jersey Zinc Co.*, 86 N.M. 538, 525 P.2d 898 (Ct.App.), *cert. denied*, 86 N.M. 528, 525 P.2d 888 (1974). *See also Valdez v. McKee*, 76 N.M. 340, 414 P.2d 852 (1966) (when an employer has furnished all reasonable medical treatment, the employer not liable for additional medical services incurred by the worker). In this case, Salcido did not demand or request additional medical treatment but merely incurred the bills for chiropractic treatment, and submitted them to Southwest for payment. Thus, Southwest is not liable for Salcido's bills for chiropractic treatment.

We would affirm the trial court.

RIORDAN, J., concurs with the dissenting opinion.