# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **July 23, 2018**

**NO. A-1-CA-34675**

**FRANK DART,**

Plaintiff-Appellee,

v.

**CHIEF KYLE WESTALL,**
**CITY OF FARMINGTON POLICE**
**DEPARTMENT, and**
**CITY OF FARMINGTON,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Louis E. DePauli Jr., District Judge**

Kennedy Kennedy & Ives, LLC
Shannon L. Kennedy
Joseph P. Kennedy
Laura S. Ives
Albuquerque, NM

for Appellee

Miller Stratvert P.A.
Virginia Anderman
Albuquerque, NM

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellants

# OPINION

**VIGIL, Judge.**

{1}    The City of Farmington, Farmington Police Department (FPD), and FPD Chief Kyle Westall (collectively, Defendants), appeal from a jury verdict awarding damages to Plaintiff Frank Dart, an FPD detective, under New Mexico's Whistleblower Protection Act (the WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010). Plaintiff's WPA claim stemmed from his communication to Defendants that he believed Defendants were in violation of NMSA 1978, Section 32A-4-3 (2005)[1] by failing to promptly and

---

[1]Section 32A-4-3 states in pertinent part:

A.    Every person, including a licensed physician; a resident or an intern examining, attending or treating a child; a law enforcement office; a judge presiding during a proceeding; a registered nurse; a visiting nurse; a schoolteacher; a school official; a social worker acting in an official capacity; or a member of the clergy who has information that is not privileged as a matter of law, who knows or has a reasonable suspicion that a child is an abused or neglected child shall report the matter immediately to:

     (1)    a local law enforcement agency;

     (2)    the department; or

     (3)    a tribal law enforcement or social services agency for any Indian child residing in Indian country.

immediately investigate reports of child abuse and neglect referred to FPD from the New Mexico Children, Youth and Families Department (CYFD). Defendants raise four issues on appeal: (1) whether the district court erred in denying their pretrial motion for summary judgment; (2) whether the jury's verdict in favor of Plaintiff was supported by substantial evidence; (3) whether the district court abused its discretion in denying admission of internal FPD memoranda that Defendants contend were

B. A law enforcement agency receiving the report shall immediately transmit the facts of the report and the name, address and phone number of the reporter by telephone to the department and shall transmit the same information in writing within forty-eight hours. The department shall immediately transmit the facts of the report and the name, address and phone number of the reporter by telephone to a local law enforcement agency and shall transmit the same information in writing within forty-eight hours. . . .

C. The recipient of a report under Subsection A of this section shall take immediate steps to ensure prompt investigation of the report. The investigation shall ensure that immediate steps are taken to protect the health or welfare of the alleged abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse or neglect. A local law enforcement officer trained in the investigation of child abuse and neglect is responsible for investigating reports of alleged child abuse or neglect at schools, daycare facilities or child care facilities.

. . . .

F. A person who violates the provisions of Subsection A of this section is guilty of a misdemeanor.

crucial to their defense; and (4) whether a comment made by Plaintiff's counsel during a bench conference, which may have been heard by the jury, prejudiced Defendants and tainted the jury's verdict. We affirm.

**BACKGROUND**

{2}     As an FPD detective, Plaintiff was assigned to investigate crimes against children, including CYFD referrals. He was later assigned to serve simultaneously on an FBI-FPD Cyber Crime Task Force (CCTF) aimed at investigating and apprehending high-technology criminals. At the time of the communications underlying Plaintiff's WPA claims, Plaintiff's direct supervisor was Sergeant Robert Perez. Plaintiff's complaint alleged multiple violations of the WPA. Defendants' motion for summary judgment was granted on all the claimed violations except one. The district court determined that there were disputed issues of material fact about whether Plaintiff made communications to FPD concerning the department's failure to fulfill its statutory duties under Section 32A-4-3 and whether those communications were protected under the WPA, and permitted this claim to proceed to trial.

{3}     Following trial, the jury awarded Plaintiff $4,000 in economic damages and awarded $200,000 damages for emotional pain and suffering. Defendants filed two post-trial motions. The first sought judgment as a matter of law, arguing that Plaintiff

failed to present sufficient evidence to support the verdict. The second sought remittitur of the award for pain and suffering, or in the alternative, a new trial, arguing that the jury's award was not supported by the evidence, and the district court erred in excluding evidence that Defendants argued was crucial to their defense, and that Defendants were prejudiced by statements made by Plaintiff's counsel during a bench conference that may have been heard by the jury. The district court denied the post-trial motions, and Defendants appeal.

**DISCUSSION**

**I. The District Court's Partial Denial of Defendants' Motion for Summary Judgment**

{4} We begin by addressing Defendants' claim that the district court erred in denying their motion for summary judgment. Because it did so only on the basis of its finding that Plaintiff had raised genuine issues of material fact existed as to whether Plaintiff engaged in communications protected under the WPA, this argument is not reviewable. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 19, 106 N.M. 523, 746 P.2d 152 (holding that "denial of a motion for summary judgment is not reviewable after final judgment on the merits[, and i]f a summary judgment motion is improperly denied, the error is not reversible for the result becomes merged in the subsequent trial"); *Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶¶ 7-12, 123 N.M. 362, 940 P.2d 468 (stating that a narrow exception

4

to the general rule stated in *Green* applies to permit post-trial appeal of denial of summary judgment, but only if "(1) the facts are not in dispute; (2) the only basis of the ruling is a matter of law which does not depend to any degree on facts to be addressed at trial; (3) there is a denial of the motion; and (4) there is an entry of a final judgment with an appeal therefrom"). The *Green* exception does not apply because as already discussed, the facts in the summary judgment record were disputed. Moreover, those disputes were resolved by the jury in Plaintiff's favor after hearing both sides.

## II. Sufficiency of the Evidence Establishing Plaintiff's WPA Claim

{5} The focus of Defendants' appeal is that insufficient evidence was presented to support the jury's verdict in favor of Plaintiff under the WPA. Specifically, Defendants challenge the sufficiency of the evidence to establish that (1) "Plaintiff engaged in protected activity by communicating to his superiors his belief that [Defendants] were violating state law by failing [their] duty required by state law"; and (2) "Plaintiff had a good faith belief that . . . Defendants were in violation of state law[.]"

## A. Standard of Review

{6} "In reviewing a sufficiency of the evidence claim, this Court views the evidence in a light most favorable to the prevailing party and disregards any

inferences and evidence to the contrary." *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 13, 143 N.M. 506, 177 P.3d 1080 (alteration, internal quotation marks, and citation omitted). "We defer to the jury's determination regarding the credibility of witnesses and the reconciliation of inconsistent or contradictory evidence." *Id.* "We simply review the evidence to determine whether there is evidence that a reasonable mind would find adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Atler v. Murphy Enters. Inc.*, 2005-NMCA-006, ¶ 13, 136 N.M. 701, 104 P.3d 1092 (internal quotation marks and citation omitted); *see also Littell*, 2008-NMCA-012, ¶ 33 (stating that in reviewing the jury's verdict in favor of the plaintiff as to his hostile work environment claim for substantial evidence, "[w]e evaluate the evidence with reference to the language of the jury instructions given, which constitute the law of the case").

**B.     The Jury Instructions**

{7}     There were no objections to any of the jury instructions we discuss below. The jury was instructed, in pertinent part:

> The Plaintiff . . . seeks compensation from . . . Defendants . . . for damages that Plaintiff says were caused by retaliatory actions in violation of the [WPA.]
>
> More specifically, Plaintiff asserts the following:

6

1. While Plaintiff was a detective, he communicated to his superiors his good faith belief that the Defendants were violating state law by failing in [their] duties regarding the handling of child abuse cases.

2. Based upon his communications to his superiors that . . . Defendants . . . were violating the law, Plaintiff's superiors engaged in retaliatory action against the Plaintiff.

3. Plaintiff suffered economic and emotional damage because of the adverse employment action taken against him.

4. Plaintiff claims he is entitled to damages he suffered because Defendants' actions violated the [WPA].

The jury was further instructed that Plaintiff had the burden of proving the following essential elements "by the greater weight of the evidence":

1. Plaintiff engaged in protected activity by communicating to his superiors his belief that . . . []Defendants[] were violating state law by failing [their] duty required by state law;

2. Plaintiff had a good faith belief that . . . Defendants were in violation of state law;

3. Plaintiff suffered a retaliatory action by Defendants;

4. Plaintiff's protected activity was a cause of the retaliatory action;

5. . . . Plaintiff suffered damages because of the retaliatory actions.

7

"The jury was instructed that [t]o prove by the greater weight of the evidence means to establish that something is more likely true than not true." A "fact[,]" the jury was also instructed, "may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved."

**C.    Analysis**

**1.    Sufficient Evidence Was Presented to Establish That Plaintiff Engaged in Communications That Constituted a "Protected Activity"**

{8}    Regarding the first element of Plaintiff's WPA claim, the jury was instructed that "[a] public employer violates the [WPA] if it takes a 'retaliatory action' against a public employee because the public employee communicates to the public employer, or to a third party, information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." This kind of communication constitutes a "protected activity." After deliberations, the jury answered "Yes" in response to a special interrogatory asking whether "Plaintiff engage[d] in protected activity by communicating to his superiors his belief that Defendants were violating state law by failing its duty required by state law[.]"

{9}    The evidence at trial established that Plaintiff communicated to his supervisors and chain of command between 2002 and 2011 his belief that FPD was not timely investigating CYFD referrals. Plaintiff first voiced this belief in 2002 to his

8

supervisor at the time, Sergeant Kim Walker, who responded by telling Plaintiff that "he didn't have time to deal with it, that he knew that there were a lot of" CYFD referrals, and that Plaintiff just needed to do the best he could with them. Plaintiff later voiced his belief that CYFD referrals were not being timely investigated, that it was "impossible" for him to handle his caseload, and that he needed more help and resources, to Defendant Westall both when Defendant Westall served as lieutenant and captain of the FPD Detective Division. Plaintiff testified that Defendant Westall responded that he could not give Plaintiff any additional resources.

{10}    Similarly, in 2009 and 2010, Plaintiff requested additional resources from Sergeant Perez to investigate CYFD referrals, which he did not receive When Plaintiff was assigned several new CYFD referrals to review in March 2011 by Sergeant Perez, Plaintiff told Sergeant Perez that FPD could not "just read them. They actually have to be Plaintiff followed up on this interaction by sending a memorandum to Sergeant Perez and others in his chain of command dated March 10, 2011, in which Plaintiff characterized FPD's failure to timely investigate or provide him with the resources to investigate CYFD referrals as "potential negligence" on the part of FPD.

9

{11} Viewing the evidence in the light most favorable to Plaintiff and indulging all reasonable inferences in favor of the verdict, we conclude sufficient evidence supported the jury's finding on the first element of Plaintiff's WPA claim.

**2.      Sufficient Evidence Was Presented to Establish That Plaintiff Had a Good Faith Belief That Defendants Were in Violation of State Law**

{12} On the second element of Plaintiff's WPA claim, the jury was instructed that "[a] public employee believes in 'good faith' that an action or failure to act is an unlawful or improper act when a reasonable basis exists in fact as evidenced by the facts available to the public employee." An " 'unlawful or improper act' " was defined as a "proposed or actual practice, procedure, action or failure to act on the part of a public employer[,]" which "violates or may violate a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subidivision of the state."

{13} Additionally, as set forth above, Section 32A-4-3(C) provides that recipients of CYFD referrals "shall take immediate steps to ensure prompt investigation of the report. The investigation shall ensure that immediate steps are taken to protect the health or welfare of the alleged abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse or neglect." A copy of Section 32A-4-3 was admitted into evidence. The jury answered "Yes" in response

to a special interrogatory on the special verdict form asking whether "Plaintiff's communication [constituting a protected activity was] made in good faith[.]"

{14} In light of the jury's receipt of a copy of Section 32A-4-3 and the evidence presented at trial, a reasonable juror could conclude Plaintiff in "good faith" believed that Defendants were in violation of state law in failing to immediately and promptly investigate CYFD referrals. Evidence supporting Plaintiff's "reasonable basis" for this belief stemmed from the evidence that between 2001 and 2004 or 2005, Plaintiff was the only detective investigating CYFD child abuse and neglect referrals to FPD; it was routine for Plaintiff to have a caseload of sixty pending cases with "literally hundreds of CYFD reports that were coming in"; and Plaintiff was aware that he could not investigate all of the cases involving crimes against children and CYFD referrals that came across his desk, requiring him to balance his investigatory responsibilities through a "triage" process in which he would prioritize cases where a child was "more in danger than in another case, and I would have to focus my attention on that case. . . . And in . . . the other cases, I simply could not investigate them by myself."

{15} Additionally, as already described, Plaintiff testified that he repeatedly voiced his belief that there was a lack of resources provided to him by FPD to investigate

CYFD referrals amounting to "potential negligence" on the part of FPD, but that his supervisors repeatedly failed to act to remedy the problem.

{16}     Viewing the evidence in the light most favorable to Plaintiff and indulging all reasonable inferences in favor of the verdict, we conclude sufficient evidence supported the jury's finding on the second element of Plaintiff's WPA claim.

{17}     In so concluding, we reject Defendants' argument that Plaintiff failed to establish that he had a "good faith" basis for believing Defendants were in violation of state law in failing to promptly and immediately investigate CYFD referrals because the only criminal penalty imposed under Section 32A-4-3 applies to the mandatory reporting requirement established under Subsections A and F. Plaintiff, under the instructions given to the jury, was not required to establish that he had a "good faith" belief that Defendants were committing a crime in their handling of CYFD referrals, but only that Defendants' handling of these cases was improper or in violation of law. Plaintiff satisfied this burden.

**3.     Sufficient Evidence Was Presented to Establish That: Plaintiff Suffered Retaliatory Actions by Defendants; Plaintiff's Protected Activity Was a Cause of the Retaliatory Action; and That Plaintiff Suffered Damages Because of the Retaliatory Action**

{18}     Although Defendants do not specifically challenge the jury's findings regarding elements three through five of Plaintiff's WPA claim, we briefly address

12

the supportive evidence that underpins these determinations given the interrelationship of each of the elements within a claim brought under the WPA.

{19} The jury was instructed that a "[r]etaliatory action" is "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." "In determining whether Plaintiff was retaliated against because he engaged in protected activity, you must determine whether that conduct was a motivating factor in the retaliatory conduct against Plaintiff."

{20} Further, the jury was instructed, a "motivating factor" is "a factor that plays a role in the decision to retaliate against Plaintiff. It need not be the only reason, nor the last or latest reason, for the retaliatory actions of . . . Defendants." The jury was instructed as well, that "[a]n act is a cause of injury or harm if it contributes to bringing about the injury or harm. It need not be the only explanation for the injury or harm, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result." Lastly, the jury was instructed that in order to be a " 'cause,' the act, nonetheless, must be reasonably connected as a significant link to the injury or harm."

{21} The jury answered "Yes" to special interrogatories asking: (1) "Did the Plaintiff suffer a retaliatory action by any of . . . Defendants?"; (2) "Was the

Plaintiff's protected activity a cause of the retaliatory action?"; and (3) "Did Defendants' conduct cause economic harm . . . and emotional pain and suffering to Plaintiff?"

{22} Evidence was presented that between 2004 and 2010, Plaintiff consistently received positive performance evaluations for his work and was recognized for his dedication in investigating crimes against children. However, in response to his March 10, 2011 memorandum, Plaintiff testified that he was reprimanded by Sergeant Perez and retaliated against by FPD.

{23} Evidence of Defendants' retaliatory action was presented by testimony that Defendants removed Plaintiff from the CCTF, created a hostile work environment, made humiliating comments about him to his colleagues, issued him a substandard work vehicle, and required him to surrender his key to the forensic lab and cease investigating his caseload of crimes against children.

{24} Further, the jury was provided Plaintiff's March 10, 2011 memorandum voicing his belief that Defendants' handling of CYFD referrals constituted "potential negligence" and was a "motivating factor" in Defendants' retaliation against him given that Defendants' reprimand and retaliatory actions were undertaken only after Plaintiff's chain of command's receipt of the memorandum.

14

{25} Finally, Plaintiff testified that he suffered depression, rage, and fear that he would be terminated before he reached eligibility for retirement that caused him to seek counseling, as well as the loss of detective and CCTF overtime pay resulting from transferring back to the patrol division.

### III. The District Court's Denial of Admission of Sergeant Perez's Memorandum

{26} Defendants assert that the district court erred in denying admission of the memorandum drafted by Sergeant Robert Perez, which documented the reprimand of Plaintiff that occurred after Plaintiff's chain of command received Plaintiff's March 10, 2011 memorandum, under the business records exception to the rule against hearsay, *see* Rule 11-802 NMRA; Rule 11-803(6) NMRA. Even if we assume that the memorandum was admissible, we conclude that any error in excluding it was harmless. *See Cumming v. Nielson's, Inc.*, 1988-NMCA-095, ¶ 28, 108 N.M. 198, 769 P.2d 732 ("We review the admission and exclusion of evidence under an abuse of discretion standard. In addition, the complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." (citation omitted)); *see also Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, ¶¶ 36-37, 108 N.M. 722, 779 P.2d 99 (determining that erroneously admitted hearsay does not automatically warrant reversal; there must be a showing that the admission was prejudicial under Rule 1-061 NMRA). Rule 1-061 provides:

15

No error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{27} In support of their claim of prejudice resulting from the district court's exclusion of Sergeant Perez's memorandum, Defendants argue that "[w]ritten confirmation that no one in [Plaintiff's] chain of command ever reported that [Plaintiff] was claiming a violation of Section 32A-4-3, and that what was conveyed was the admitted failure to obey a direct order and [Plaintiff's] own representations that he could not do his job and be on the CCTF, was vital to [Defendants'] defense." "Without these documents," Defendants contend, they "had only post-lawsuit testimony, rather than contemporaneously prepared documents, to prove that it had not understood that [Plaintiff] was attempting to complain of a illegality or unlawfulness."

{28} However, as Defendants concede, the content of Sergeant Perez's memoranda was cumulative of other testimony that Plaintiff's chain of command's understanding of Plaintiff's complaints was that FPD was defrauding the FBI based on Plaintiff's misreading of the FBI-FPD's Memorandum of Understanding establishing the CCTF; that Plaintiff was unable to balance his work duties; and not that FPD was in violation

16

of Section 32A-4-3. *See Cisneros v. Molycorp, Inc.*, 1988-NMCA-080, ¶¶ 27-28, 107 N.M. 788, 765 P.2d 761 (holding that any error in denying admission of medical records regarding a hearing examination that a workers' compensation claimant underwent in 1971 because they were not authenticated was harmless where the records were cumulative of the claimant's testimony that he noticed hearing loss in 1971); *Lujan v. Circle K Corp.*, 1980-NMCA-107, ¶ 21, 94 N.M. 719, 616 P.2d 432 (concluding that the exclusion of exhibits that were cumulative of testimony provided at trial was not error).

{29} Therefore, we conclude that the district court's exclusion of the memoranda did not affect the substantial rights of Defendants, and as a result, any potential error in excluding it from evidence was harmless. *See Hammond v. Reeves*, 1976-NMCA-069, ¶¶ 13-14, 89 N.M. 389, 552 P.2d 1237 (holding that although the borrower proffered at trial polygraph tests that were relevant and admissible to his usury claim against his lender, the district court's error in excluding these tests was harmless under Rule 1-061 where exclusion did not affect any substantial rights of the borrower).

**IV. Plaintiff's Counsel's Bench Conference Statement Concerning Defendants' Reason for Failing to Call Sergeant Perez to Testify**

{30} Defendants' final claim raised in their post-trial motion for remittitur, or in the alternative a new trial, is that they were unfairly prejudiced by the statement made by Plaintiff's counsel during a bench conference, which may have been heard by the

17

jury, that Defendants refused to call Sergeant Perez to testify because he was suing FPD. In support of this claim, Defendants filed the affidavit of a paralegal for the law firm representing Defendants. The paralegal stated that although she did not hear Plaintiff's counsel's statement, Defendant Westall and Deputy Chief Keith McPheeters (who were sitting at defense counsel's table at the time) heard the statement. She also stated that after trial, she spoke with one of the jurors who told her that "she had not personally heard the statement[,] . . . but that other jurors had heard it and it was discussed during breaks."

{31} Defendants contend that Plaintiff's counsel's statement was "clearly intended" to be heard by the jury and to prejudice Defendants by permitting them "to wander onto the path of speculation, to wonder what Perez might have said about [Plaintiff's] case, why [FPD] would not have wanted the jury to hear him, whether this lack of candor extended to other aspects of the case, and whether [FPD] had mistreated Perez." And "[b]ecause information outside the evidence was brought to the attention of the jury[,]" Defendants argue that their "right to a fair trial was violated." We disagree.

{32} We review the district court's denial of a motion for a new trial or remittitur for an abuse of discretion. *Morga v. FedEx Ground Package Sys., Inc.*, 2018-NMCA-039, ¶ 8, 420 P.3d 586, *cert. granted* (No. S-1-SC-36918, June 4, 2018). "The

18

[district] court abuses its discretion when its decision is contrary to logic and reason." *Id.* (alteration, internal quotation marks, and citation omitted). Additionally, "[i]t is for the [district] court to determine whether . . . prejudicial misconduct requir[es] a mistrial." *Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 36, 384 P.3d 1098 (internal quotation marks and citation omitted). "A new trial based on counsel misconduct is warranted if the conduct was improper, and it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." *Id.* ¶ 37 (internal quotation marks and citation omitted). "The burden is upon [the] party claiming error to demonstrate that his rights were prejudiced by the claimed error." *Id.* (internal quotation marks and citation omitted).

{33} The issue arose in the following context. At trial, through the testimony of former FPD Lieutenant Ronald Hardy, Defense counsel sought to introduce as a record of regularly conducted activity FPD Sergeant Perez's memorandum documenting the verbal counseling and coaching Plaintiff received for unsatisfactory performance and insubordination and intemperate behavior in response to his March 10, 2011 memorandum. Plaintiff objected to the admission of Sergeant Perez's memorandum on hearsay grounds.

{34} During the ensuing bench conference, in support of her objection, Plaintiff's counsel argued that Sergeant Perez's memorandum was being "offered for the truth

19

of [the] matter asserted, and they have to call in Perez to lay the foundation for it. They haven't established any exception to the hearsay rule. And they're trying to get around having to call Perez because he sued [FPD]." Defense counsel responded, "I think . . . the jury heard that. I think that is—I'm shocked that she would say that in open court. I think the jury might have heard that. . . . I'm very upset, Your Honor." The district court ruled, without further argument, that the memorandum was inadmissible hearsay without the testimony of Sergeant Perez.

{35} During the lunch recess, the district court revisited the issue with counsel. When asked by the district court how she thought the statement "impact[ed] this case[,]" defense counsel said, "Well it's not evidence. It is not evidence in the case and I'm concerned that the jury is going to get—you know, what they might speculate to about that. I mean, I don't know that there's a cure for that. I'm discussing it with my clients."

{36} The district court asked whether Defendants wanted a curative instruction to be given to the jury. Defense counsel replied, "Well, obviously we don't want it repeated," but that she did not know how to cure it. Plaintiff's counsel stated that she did not believe that the jury heard it, and that she "certainly didn't intend to say it loud enough for the jury to hear it." The last word was from defense counsel, who stated "I just . . . think counsel needs . . . to be more careful." The district court

20

thereafter ruled that reference to Perez suing FPD could not be made to the jury by either party. Additionally, in denying Defendants' post-trial motion for remittitur or in the alternative a new trial, the district court concluded that the "evidence presented by . . . Defendants to establish that the jury was so prejudiced by the statement of Plaintiff's counsel" regarding Sergeant Perez suing FPD, "that a new trial is required, is insufficient[.]"

{37}     Under these facts, we conclude that the district court did not abuse its discretion in denying Defendants' motion for remittitur or in the alternative a new trial. Despite Defendants' failure to move for a mistrial, the district court took reasonable measures to minimize any prejudice to Defendants as a result of the comment. Specifically, the district court offered to give the jury a curative instruction to disregard the comment, which Defendants declined, and ruled that neither party was permitted to comment to the jury or elicit evidence concerning Sergeant Perez's absence and lawsuit against FPD. *See Norwest Bank of N.M., N.A. v. Chrysler Corp.*, 1999-NMCA-070, ¶ 51, 127 N.M. 397, 981 P.2d 1215 (determining that the district court did not abuse its discretion in a minivan crashworthiness case after certain cross-examination by manufacturer and automobile dealership erroneously implied that the driver and passengers had pursued other lawsuits against those defendants, where the plaintiffs did not move for a mistrial and the district court gave an official

admonishment to defense counsel and curative instruction to the jury). Accordingly, we conclude that the district court's denial of Defendants' post-trial motion was not contrary to logic and reason and that Defendants are not entitled to remittitur or a new trial.

**CONCLUSION**

{38}   The jury's verdict and district court's post-trial rulings are affirmed.

{39}   **IT IS SO ORDERED.**


_____

**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**J. MILES HANISEE, Judge**