472 So.2d 197 (1985)
Milton H. GUILLOT
v.
SENTRY INSURANCE COMPANY and Insurance Company of Wausau.
No. 84-CA-295.
Court of Appeal of Louisiana, Fifth Circuit.
June 5, 1985.
Louis M. Kiefer, Jr., Metairie, for defendants-appellants.
R. Ray Orrill, Jr., Orrill & Avery, New Orleans, for plaintiff-appellee.
*198 Before BOUTALL, CURRAULT and GAUDIN, JJ.
GAUDIN, Judge.
Milton H. Guillot, plaintiff in this workmen's compensation proceeding, contends that he suffered a job-related nervous breakdown after being told unexpectedly and without any explanation that he was being fired.
The trial judge, citing Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972), and finding that Guillot's abrupt termination, considering prevailing conditions, constituted "... violence to the physical structure of the body ...", awarded partial disability benefits in accord with LSA-R.S. 23:1221(3). We affirm.
On appeal, Guillot's employer, Sentry Insurance Company, argues that Guillot should not receive compensation for a mental condition as he did not first receive an actual physical injury.
The facts, generally, are not in dispute. Guillot, 38 years of age at time of trial in October, 1982, was employed as a claims adjuster by Sentry. He was told shortly before June 12th that the company was going to curtail operations in the New Orleans area. Guillot was, he said, "... begged to go ..." to Baton Rouge by his supervisor, Tony Campbell. Guillot agreed to the transfer, and preparations for the move were being made by him and his family and by Sentry.
Other claims employees, however, were not willing to relocate and at least three of them, including the section's manager, quit. "Mr. Campbell came down and took over," Guillot stated. "He became friendly with me and he was dropping an unbelievable amount of files on my desk."
On June 12th, Guillot said he was called by Campbell to his office and told, according to Guillot, "... that I was being terminated... I couldn't believe what I was hearing ... he wouldn't even give me a reason."
Guillot went home and later that day he went to see Dr. Emile Bertucci, who had him admitted to DeLaRonde Hospital, where he was seen by Dr. Roger Anastasio, a psychiatrist, on June 14.
Dr. Anastasio said:
"I found Mr. Guillot to be exceedingly distressed with numerous signs and symptoms of severe emotional upset. He had marked pressuring of his speech. His mind jumped from one subject to another in a very rapid fashion. He was literally unable to collect his thoughts and presented an illogical, incoherent narrative. I felt he was having significant psychiatric problems ...
"... when I first saw him I thought he was over the line to the point where he needed some external controls to prevent him from hurting himself and to keep him in a place where he wouldn't be dangerous to himself, dangerous to others. I felt that he was very, very disabled...
"When someone is in a manic state their brain cells are not functioning in the same way normal brain cells are functioning...
"I believe that Mr. Guillot's significant problems that required psychiatric intervention and hospitalization and the continued therapy he is getting now are the result of his being fired and under the circumstances he was fired and what it meant to him as a person was sufficient to bring about these severe symptoms requiring medical intervention."
Feeling that Guillot "... could not be managed ..." in a general hospital, Dr. Anastasio had him transferred to Touro Infirmary for psychiatric in-patient care.
Guillot could not work for approximately six months. At time of trial, he had resumed working on a part-time basis but he remained under Dr. Anastasio's supervision. Guillot has regular therapy sessions, sometimes as often as three times a week and at times as far as a month apart, and he takes daily doses of anti-depression and other types of medication.
Prior to June of 1981, Guillot had emotional problems. In early 1976, he sought psychiatric help after a divorce; and in July *199 of the same year his stomach was pumped at Ochsner Hospital following an overdose of pills. He was transferred to the Veterans Administration Hospital in New Orleans where he remained from July 23 to August 20.
Following his release from the VA Hospital, Guillot had further emotional troubles. He received medication and he had, hospital records show, problems with compulsive gambling and heavy drinking.
He was prescribed valium in 1980 because of frustration over finances; and in late April, 1981, he took another overdose of pills, being depressed because he couldn't pay his bills.
Guillot had been with Sentry for slightly more than a year before the incident in Campbell's office. Prior to working for Sentry, Guillot had served with distinction as an army sergeant in Vietnam and then had been satisfactorily employed by several other insurance firms.
While Guillot had a shaky emotional past, he apparently was functioning well at Sentry before being summoned by Campbell on June 12th.
The Supreme Court of Louisiana has dealt with various mental stress situations. In 1963, the Court decided Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468. There, an executive who did not perform manual labor and who suffered a heart attack at his home after being informed of the death of his company's managing director was denied compensation benefits. The claimant's stroke, the Court found, was not an "accident."
Danziger was followed nine years later by Ferguson v. HDE, Inc., supra, wherein the Supreme Court awarded compensation to an employee who sustained either cerebral thrombosis or cerebral hemorrhage while arguing with a supervisor over the amount of his paycheck. In specifically overruling Danziger, the Court held that there can be an "accident" and an "injury" when the disability results solely from extraordinary mental or emotional causes.
The Court said:
"We have no difficulty in concluding in the case before us that Ferguson suffered an injury arising out of and in the course of his employment. Although he received no blow or trauma, and although he was not injured because of physical stress or strain, the medical testimony is clear that he suffered `violence to the physical structure of the body,' without which he would not have been paralyzed. The injury was accidental because it was unexpected and unforeseen. It happened suddenly and violently. It produced at the time objective symptoms...
"Louisiana is among the many jurisdictions that look to the employee (with rare exceptions) to determine whether there was an unexpected and catastrophic effect upon him in deciding that the injury is accidental. Is there a valid distinction between injuries which occur in the course of some physical exertion, however slight, and injuries which occur because of emotional shock, fright or stress? The violence to the physical structure of the body is the same. The sudden and unexpected nature of the occurrence is the same. The catastrophic effect upon the workman is the same. When the events are clearly job-connected, there seems to be no reason to sustain a claim for a heart attack or a stroke caused by some ordinary physical exertion and to reject a claim caused by extraordinary mental or emotional exertion."
H. Alston Johnson notes in his Developments in the Law, 1982-83, 44 La.L.R. 583, that this state's courts, in the years following Ferguson, have become more receptive to cases involving mental stress. However, the movement has been timid, and the longer the period over which the stress continues and the more diffuse the supposed sources of the stress become, the more tenuous is the causal relationship between employment and the accident.
*200 Here, however, Guillot's severe emotional setback quickly followed his confrontation with Campbell, and, according to Dr. Anastasio, was the cause of Guillot's unusual mental stress and his same-day hospitalization. There is no conflicting medical opinion.
In Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981), rehearing denied September 3, 1982, the Supreme Court found that a worker who suffered shortness of breath and chest pains was entitled to compensation even though the symptoms were caused by arteriosclerosis rather than trauma. The attacks had come suddenly and unexpectedly.
From Adams:
"Under our workmen's compensation law, plaintiff is entitled to compensation benefits if he has suffered `personal injury by accident arising out of and in the course of his employment.' R.S. 23:1031. An `accident' is defined as `an unexpected or unforeseen event happening suddenly or violently ...'"
An injury, the Court said, can be compensable despite the absence of any physical tension or exertion. The plaintiff's disability "... occurred by accident ..." within the meaning and scope of workmen's compensation.
The Court in Adams and also in Ferguson reversed judgments in favor of the defendants in the district courts and courts of appeal. There were strong Supreme Court dissents, particularly in Adams.
Nonetheless, while we might be inclined to deny compensation benefits to Guillot, we cannot say that the trial judge erred in relying on Ferguson and finding partial disability because of extraordinary work-related stress. Unquestionably Guillot had a preexisting emotional condition making him more susceptible to extreme mental strain, but this does not disqualify him from receiving benefits. The plaintiff in Adams had preexisting thickening and hardening of the arteries and was found eligible for compensation. See also Hughes v. Webster Parish Police Jury, 414 So.2d 1353 (La.App. 2nd Cir.1982); and Blades v. Davis, 446 So.2d 958 (La.App. 3rd Cir.1984).
Finally, we note that this is a workmen's compensation case, and, as was stated in Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979), and in numerous other decisions, a trial judge's findings in compensation matters should not be upset on appeal unless manifestly erroneous. The Court in Crump stated:
"On appellate review, the trial court's factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.
"See: Cadiere v. West Gibson Products Company, 364 So.2d 998 (La.1978); Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974). See also Canter v. Koehring, 283 So.2d 716 (La.1973).
"As noted by these decisions, the reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
The trial judge did not indicate here, nor are we saying, that any person fired from his or her job can seek psychiatric help and start drawing compensation checks. The instant facts and circumstances are, however, unique. Guillot, a person with a troubled emotional history, was doing quite well as a claims examiner and *201 was preparing to make a move, at Sentry's request and urging, to Baton Rouge. Then, like a bolt from the blue, he was informed that he was being terminated and not given any reason for the firing. The onset of mental stress was sudden and disabling, and the only medical witness, Dr. Anastasio, emphatically and without hesitation related Guillot's hospitalization and later treatment to his meeting with Campbell. The psychiatrist explained that such an encounter could, and did here, precipitate physiological changes in brain cells along with biochemical changes that could be measured clinically. Guillot had indeed, the trial judge found, suffered an "accident" covered by workmen's compensation statutes.
For these reasons, we affirm the district court judgment awarding partial disability benefits to appellant, under R.S. 23:1221(3), with Sentry to bear all costs of this appeal.
AFFIRMED.