482 So.2d 970 (1986)
Mary DAVIS, Plaintiff-Appellee,
v.
OILFIELD SCRAP & EQUIPMENT COMPANY, et al., Defendants,
Mentor Insurance Limited, Defendant-Appellant.
No. 84-1000.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
*971 Michael J. Murphy of Lord, Day & Lord, New York City, for defendant-appellant.
Antoon & Dalrymple, Joseph T. Dalrymple, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, LABORDE and KING, JJ.
DOMENGEAUX, Judge.
Summary judgment was rendered in this worker's compensation case in favor of the plaintiff, Mary Davis. The defending insurance company, Mentor Insurance Limited, has appealed and specifies five assignments of error. The appellant alleges error in the overruling of the peremptory exceptions of prescription and no cause of action, the summary disposition of the case, the imposition of penalties and attorney's fees for arbitrary and capricious nonpayment of benefits, and the award of $1,000.00 as an expert witness fee to Doctor Wilbur.

FACTS
Prior to the events giving rise to this case Mary Davis had been diagnosed as having a multiple personality disorder. This condition caused Mrs. Davis to seek the psychiatric care of Dr. W.S. Easterling in May of 1981. Although Mrs. Davis' condition necessitated treatment, her different personalities cooperated to assist her in coping with her environment. Specifically, prior to February 25, 1982, Mrs. Davis was able to maintain a full time job at Oilfield Scrap & Equipment Company as the personal secretary to George Rothschild, the owner of the company.
On February 25, 1982, George Rothschild committed suicide by shooting himself in *972 the chest with a large caliber pistol. Mrs. Davis, who was working in the office adjacent to Mr. Rothschild's, heard the shot and immediately ran to her supervisor's aid. During the twenty minutes it took Mr. Rothschild to expire, Mrs. Davis was burdened with the task of contacting the emergency services and administering first aid to the fatally wounded man, in addition to coping with the psychological stress of the situation. Upon reaching the death scene, Sgt. Urena of the Alexandria Police Department was confronted with an alternatingly sedate and hysterical witnessMrs. Davis.
At the insistence of the decedent's widow and new owner of the company, and against the advice of Doctor Easterling, Mrs. Davis continued her employment with Oilfield Scrap & Equipment Company. However, Mrs. Davis began experiencing increasing difficulty with depression, emotional instability, and dissociative episodes. Finally, yielding to the advice of her physician who had noticed suicidal tendencies developing in his patient, Mrs. Davis terminated her employment on June 25, 1982, and admitted herself to the Psychiatric Inpatient Service of the University of Kentucky Medical Center on June 30, 1982. Mrs. Davis remained hospitalized under the care of Dr. Cornelia Wilbur, a psychiatrist, until January 28, 1983. Thereafter, Mrs. Davis moved to a nearby Lexington apartment to continue treatment.
On May 12, 1983, Mary Davis filed a suit against Oilfield Scrap & Equipment Company in worker's compensation and tort and against Mentor Insurance Limited as the worker's compensation insurer of the employer. The two causes of action was severed by mutual agreement between the parties. The plaintiff moved for summary judgment in her favor on the worker's compensation claim. The trial judge granted the motion based on the pleadings, the defendant's answers to interrogatories, and the plaintiff's deposition and affidavits. The defendant declined to present the court with opposing affidavits.

PRESCRIPTION
The appellant alleges that the trial court erred in not hearing and granting the defendant's peremptory exception of prescription. Since the granting of the summary judgment had the effect of overruling the exceptions of prescription and no cause of action, we must determine whether, as the appellant claims, the ruling was erroneous. Roddy v. NORCO Local 4-750 Oil, Chemical & Atomic Workers International Union, 332 So.2d 576 (La.App. 4th Cir.1976), on appeal after remand, 351 So.2d 219 (La. App. 4th Cir.1977), reversed on other grounds, 359 So.2d 957 (La.1978).
In February of 1982, when this cause of action arose, La.R.S. 23:1209 provided in pertinent part:
"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter.... Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."
This statute creates a peremptive time period within which proceedings for voluntary settlement or judicial enforcement of claims must commence. Johnson v. Morton Salt Company, 377 So.2d 549 (La.App. 3rd Cir.1979). In this case the accident (Rothschild's death) occurred on February 25, 1982, Mary Davis quit work on June 25, 1982, and her suit for compensation benefits was filed on May 12, 1983. Since the suit was obviously not filed within one year of the date of the accident, but was filed within two years thereof, the issue becomes whether this case presents the proper *973 situation for application of the rule allowing the peremptive period to begin running from the time the injury developed.
In Burleigh v. Argonaut Insurance Company, 347 So.2d 13 (La.App. 3rd Cir. 1977), writ denied, 349 So.2d 1267 (La. 1977), this Court stated:
"[W]here there is an initial manifestation of injury and of disability, but the employee is able to return to work, a new period of prescription of one year will nevertheless commence where there is either a new injury or a disabling remanifestation of the symptoms of the initial injury."
Here, Sgt. Urena's affidavit before the court on the motion for summary judgment clearly shows an initial manifestation of psychological injury. Mary Davis did return to her employment for several months, only to discover in June of 1982 that the accidental injury had indeed manifested itself to the point of total disability.
The appellee's disability fully developed and manifested itself between the time of the accident and when Mrs. Davis quit her job. The appellant claims that a serious factual question exists as to when the disability actually became manifest to determine when the peremptive period began to run. Inasmuch as the appellant failed to present the court with affidavits demonstrating that the disability became manifest before the time Mrs. Davis terminated her employment, the peremptive period began to run on that dateJune 25, 1982.[1]
Since the appellee's worker's compensation claim was filed within two years of the accident and within one year from the time she terminated her employment, the cause of action had not perempted. This assignment of error is without merit.

NO CAUSE OF ACTION
It is the appellant's contention that the trial court erred in not hearing and granting the defendant's peremptory exception of no cause of action. Specifically, the appellant argues that Mrs. Davis did not suffer an "injury" as defined by the Worker's Compensation Act; therefore, it is alleged that she has no cause to bring to court.
In Jordan v. Southern Natural Gas Company, 455 So.2d 1217 (La.App. 2nd Cir.1984), the Second Circuit concluded that a worker is entitled to compensation benefits only if
(1) a physical injury on the job leads to disabling mental problems, or
(2) emotional or mental stress on the job leads to a physical injury to the structure of the body.
The appellee herein alleges a cause of action under No. 2 above, claiming her injury resulted from the emotional stress of her employer's suicide and manifested itself in clinically observable changes in her electroencephalograms (EEGS) and chemical metabolism.
We find that the appellee has carried her burden of proving an "injury" compensable under the Worker's Compensation Act. Although this is a new and untested area of the law, Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972), on remand 274 So.2d 783 (La.App. 3rd Cir.1973) set the stage for an award of compensation benefits to a claimant who could prove injury from on-the-job stress. There, a claimant who suffered a stroke due to emotional stress was awarded compensation. Deciding that the worker had suffered an "injury" as defined by the Act, the court said:
"[a]lthough [the claimant] received no blow or trauma, and although he was not injured because of physical stress or strain, the medical testimony is clear that he suffered `violence to the physical structure of the body'...." *974 Eleven years later in Taquino v. Sears, Roebuck & Company, 438 So.2d 625 (La. App. 4th Cir.1983), writ denied, 443 So.2d 597 (La.1983), the Fourth Circuit upheld a compensation award to a worker who suffered a nervous breakdown caused by emotional stress. Inasmuch as Taquino ignored the Ferguson requirement of proving "violence to the physical structure of the body", we are more inclined to cite the recent Fifth Circuit case of Guillot v. Sentry Insurance Company, 472 So.2d 197 (La.App. 5th Cir.1985).
The facts of Guillot are substantially similar to the case before us. In Guillot, the claimant had suffered mental disorders prior to his accident. However, after being suddenly fired without explanation, the claimant's condition worsened to a point of partial occupational disability. The Fifth Circuit found an injury by violence to the physical structure of the body in the psychiatrist's testimony that the stress caused by the accident "precipitate[d] physiological changes in brain cells along with biochemical changes that could be measured clinically."
We find roughly the same set of facts before us. The appellee was functioning well with a multiple personality disorder prior to her accident. After Mr. Rothschild's suicide, Mrs. Davis' condition worsened to a point of total disability. According to the appellee's psychiatrist, this disability can be clinically measured with EEGS and chemical analysis, documenting the extent of the claimant's injury. In the absence of conflicting medical opinion, we find an "injury" has been proven.[2] The assignment alleging error in the overruling of the exception of no cause of action is without merit.

SUMMARY JUDGMENT
Appellant's third assignment alleges the trial court erred in granting the motion for summary judgment because genuine issues of material fact exist concerning the appellee's right to recover and, alternatively, the extent of her need.
A summary judgment will only be granted if
"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
La.C.C.P. Art. 966. On review, an appellate court's duty is to determine whether the supporting documents presented to the trial court were sufficient to resolve all material factual issues. If so, we must then consider whether any evidence presented by the opposing party tended to show that material facts were still at issue. However, an opposing party seeking to rebut sufficient evidence favoring the motion may not rest merely on allegations and denials contained in his pleadings. Chargois v. Trip-L-Quik, 441 So.2d 45 (La.App. 3rd Cir.1983).
The appellee herein has proven a prima facie case to the satisfaction of both this Court and the trial court. She has proven an accident occurring within the course and scope of her employment causing an injury which has resulted in her total disability. Although it failed to present the lower court with opposing evidence, the appellant in brief set forth the issues it considers as yet unsettled. The assignments considered above (peremption and whether the claimant suffered an "injury") have been disposed of. The appellant also raises the issues of causation, whether the accident occurred within the *975 course and scope of the claimant's occupation, and the extent of medical treatment necessary. However, as the appellant merely rested on the denials and allegations in its pleadings and presented no evidence to rebut the positive deposition and affidavits of the appellee, we believe the district court was correct in ruling no genuine issue of material fact remained in dispute. The summary judgment is affirmed.

PENALTIES AND ATTORNEY'S FEES
Appellant's fourth assignment alleges the trial court erred in awarding penalties and attorney's fees to the appellee. At the time of the accident, La.R.S. 23:1201.2 had not yet been amended to provide that penalties and attorney fees could be assessed against a nonpaying worker's compensation insurer. As a result, the jurisprudence had begun applying the virtually identical provisions of La.R.S. 22:658 to penalize an insurer for arbitrary or capricious nonpayment of benefits. De Jean v. B.F. Trappey's Sons, Inc., 285 So.2d 297 (La.App. 3rd Cir.1973). Both statutes require the petitioner to prove lack of probable cause for the nonpayment, or arbitrary or capricious refusal to pay.
In this case, we cannot say the nonpayment of benefits was arbitrary or capricious. The question of whether Mrs. Davis suffered a compensable injury is, alone, a basis for "probable cause". This case represents a heretofore unacceptable example of a compensable "injury". Since neither this Court nor our Supreme Court has previously awarded compensation benefits to a claimant suffering physical injury caused by purely emotional stress, we cannot say that the appellant's refusal to pay benefits was without probable cause.[3] For these reasons, the trial court's award of penalties and attorney's fees to the appellee must be reversed.

EXPERT WITNESS FEE
Finally, the appellant complains that the trial court erred in awarding an expert witness fee to Doctor Wilbur, and also erred in awarding a fee in the amount of $1,000.00. First, the appellant correctly states that according to Town of Krotz Springs v. Weinstein, 401 So.2d 664 (La. App. 3rd Cir.1981), expert witnesses are entitled only to reasonable compensation for their appearance in court and for preparatory work done. The appellant argues that since there was no trial in this matter, no expert fee is recoverable for the preparatory work furnished by Doctor Wilbur. This is incorrect. See the Louisiana Supreme Court case of Johnson v. State Farm Mutual Automobile Insurance Company, 342 So.2d 664 (La.1977), where a doctor was awarded an expert witness fee for his time in testifying at a pretrial deposition which was presented to the court in lieu of his in-court testimony.
Second, the appellant contends that even if an expert fee is due, $1,000.00 was an excessive award for the preparation of a single affidavit "which we all know was actually prepared by plaintiff's counsel." For whatever reason, Doctor Wilbur's involvement in this case has been grossly understated by the appellant. Doctor Wilbur prepared an affidavit and testified at a deposition. To give the deposition, Doctor Wilbur was required to fly from Lexington, Kentucky, to Alexandria, Louisiana, at a cost of $488.00 round trip. Further, Doctor Wilbur left Lexington at 7:40 A.M. and arrived back home again no earlier than 4:30 P.M., virtually occupying her whole day. Finally, we note that the deposition took close to three hours to complete and ultimately consisted of 110 pages. Under these circumstances we cannot say that the trial judge abused his discretion in awarding $1,000.00 as the expert witness fee for *976 Doctor Wilbur. Therefore, the appellant's fifth assignment of error is without merit.
For the above and foregoing reasons, the trial court's summary judgment in favor of the appellee and the award of a $1,000.00 expert witness fee are affirmed. The portion of the district court's judgment awarding the appellee penalties and attorney's fees for the arbitrary and capricious nonpayment of benefits is reversed.
Costs on appeal are assessed four-fifths to appellant and one-fifth to appellee.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] See Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122 (La.1986), wherein our Supreme Court elucidates upon the subject of peremption under La.R.S. 23:1209. The Court states that although an injury may manifest itself at some time other than the date the plaintiff terminates his employment, the manifestation of injury "will often coincide with the date on which he ceases employment."
[2] The appellant cites several cases in an effort to demonstrate a lack of jurisprudential foundation for the appellee's recovery. However, each of these cases is distinguishable. For instance, in Johnson v. Hartford Accident & Indemnity Company, 196 So.2d 635 (La.App. 3rd Cir.1967), the Court could find no "single physical incident or trauma which precipitated the condition...." In this case the precipitating event is clearly discernable. Stuckey v. Home Insurance Company, 433 So.2d 776 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 450 (La.1983), is similarly distinguishable. Also, the Second Circuit could find no physical injury to the structure of the body in Jordan v. Southern Gas Company, supra.
[3] For a case with similar reasoning, see Schouest v. J. Ray McDermott & Company, Inc., 411 So.2d 1042 (La.1982). There, an award of penalties and attorney's fees was reversed where the failure to pay was predicated upon an untested amendment to the worker's compensation laws and prior jurisprudence indicating the propriety of nonpayment. This case presented the appellant with similar reasons for nonpayment and, as in Schouest, we believe penalties and attorney's fees are inappropriate.