503 So.2d 674 (1987)
Mary DAVIS, Plaintiff-Appellant,
v.
OILFIELD SCRAP AND EQUIPMENT COMPANY, INC., et al., and Continental Casualty Company, Defendants-Appellees.
No. 86-251.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
*675 Altoon, Dalrymple and Giardano, Joseph T. Dalrymple, Alexandria, for plaintiff-appellant.
Gold, Simon, Edward E. Rundell, Alexandria, for defendants-appellees.
Before DOMENGEAUX, FORET and KNOLL, JJ.
DOMENGEAUX, Judge.
Plaintiff, Mary Davis, brought this suit in tort against her employer, Oilfield Scrap and Equipment Company, and its general liability insurer, Continental Casualty Insurance Company, to recover damages she sustained allegedly as a result of an intentional act of her co-employee, George Rothschild. Ms. Davis appealed the trial court's granting of a summary judgment dismissing Continental Casualty from this suit with prejudice.
Mary Davis was an employee of Oilfield Scrap and Equipment, acting as the personal secretary to George Rothschild, the owner and chief executive officer of the company. On February 25, 1982, Mr. Rothschild asked Ms. Davis to remain at her desk until closing time. Shortly thereafter while in his office, he shot himself in the chest with a pistol. Ms. Davis heard the gunshot, went into Mr. Rothschild's office, and found him bleeding profusely from the chest. Ms. Davis attempted to administer first aid and to obtain help, while staying with him until he died approximately twenty minutes later.
Ms. Davis alleged that prior to Mr. Rothschild's suicide she had been diagnosed as being a functional multiple personality; that is, she would exhibit distinct personalities under different circumstances, but was able to perform her job satisfactorily. Ms. Davis further alleged that as a result of witnessing Mr. Rothschild's death in this fashion, she began to suffer from a severe psychiatric disorder which caused her to have increased dissociative episodes. She further alleged that during these episodes other personalities would function and that she would have no recollection. Ms. Davis alleges that due to these episodes it was necessary that she leave her job and become hospitalized. She was subsequently admitted to the University of Kentucky Hospital for treatment for seven months.
Thereafter, Ms. Davis filed suit in worker's compensation and tort against Oilfield Scrap and Equipment, against Mentor Insurance Ltd. as Oilfield Scrap and Equipment's worker's compensation insurer, as well as against Continental Casualty as Oilfield Scrap and Equipment's general liability insurer. The parties agreed to sever the claim for worker's compensation from the claim in tort. The trial court entered judgment for Ms. Davis on her worker's compensation claim, which this Court affirmed on appeal. See Davis v. Oilfield Scrap and Equipment Company, 482 So.2d 970 (La.App. 3rd Cir.1986).
In her tort claim, Ms. Davis alleged that Mr. Rothschild's suicide was an "intentional act" for which Oilfield Scrap and Equipment and its liability insurer, Continental Casualty, are liable. The trial court entered judgment in favor of Continental Casualty dismissing Ms. Davis' demands against it. Ms. Davis now appeals the dismissal of Continental Casualty by summary judgment.
On appeal, Ms. Davis argues that the trial judge erred in basing the summary judgment of dismissal on the ground that Continental Casualty's general liability policy, issued to Oilfield Scrap and Equipment, excluded coverage of the claims asserted here.
Initially, we note that a summary judgment shall only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *676 genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.C.C.P. Art. 966.
With this in mind, we must determine whether Continental Casualty's general liability insurance policy issued to Oilfield Scrap and Equipment excludes the claims asserted here from coverage.
The most obvious provisions of the policy upon which Continental Casualty can rely to assert its claim to exclude coverage are policy provisions (i) and (j). These provisions state that the policy does not apply:
"(i) to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; [and]
(j) to Bodily Injury to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the Insured under an Incidental Contract;"

The clear wording of provision (i) excludes coverage for those damages which are compensated under the worker's compensation statutes. With regard to this provision there is no genuine issue of material fact. It is not disputed that Oilfield Scrap and Equipment's worker's compensation insurer, Mentor Insurance Ltd., was held liable to Ms. Davis under the worker's compensation statutes. Davis v. Oilfield Scrap and Equipment Company, supra. Therefore, we conclude that the Continental Casualty policy does exclude coverage for the damages Ms. Davis recovered under worker's compensation.
The language of provision (j) denies the employer coverage for bodily injury to an employee arising out of and in the course of his employment with the employer. The intent of this provision is to extend the exclusion from coverage under the policy to all employees who suffer work related injuries, including those not covered under the worker's compensation statutes. This provision is not ambiguous. Also, there is no genuine issue as to material fact with regard to this provision. It is not disputed that Ms. Davis' bodily injury arose out of and in the course of her employment with Oilfield Scrap and Equipment. This being the case, we conclude that provision (j) also denies coverage for the damages due to bodily injury Ms. Davis suffered on the job, including any which were not covered under the worker's compensation statutes. See Santiago v. Equipment Leasing of California, 437 So.2d 971 (La.App. 4th Cir. 1983), writ denied, 441 So.2d 1223 (La. 1983).
Ms. Davis argues that the pertinent policy provision in this case is that which provides that Continental Casualty is legally obligated to pay damages caused by an accident which results in bodily injury "neither expected nor intended from the standpoint of the insured." She argues that under Jones v. Thomas, 426 So.2d 609 (La. 1983), Oilfield Scrap and Equipment Company is vicariously liable in tort for damages to her resulting from Mr. Rothschild's intentional act. She continues, arguing that the policy provides coverage for Oilfield Scrap and Equipment's vicarious liability under the "neither expected nor intended" provision because the intentional act of Mr. Rothschild causing her injuries was neither expected nor intended from Oilfield Scrap and Equipment's standpoint.
Without deciding Oilfield Scrap and Equipment's liability under Jones, we conclude that Continental Casualty cannot be held liable under this provision. The general coverage provision providing coverage for damages caused by an accident which results in bodily injury neither expected nor intended is subject to the policy's coverage exclusions. As already stated, policy exclusions (i) and (j) are applicable to Ms. Davis' injuries and prevent Continental Casualty from being held liable as Oilfield Scrap and Equipment's insurer, whether Mr. Rothschild's suicide was an intentional act or not.
Since there are no genuine issues as to material fact, and since we conclude that *677 the Continental Casualty policy denies coverage for the claims asserted here, we conclude that the trial court properly rendered judgment in favor of Continental Casualty. Accordingly, its judgment is affirmed.
Costs on appeal are assessed against plaintiff.
AFFIRMED.