GUIDRY, Judge.
Plaintiff, Robert Daniel Theriot, filed this tort suit against his employer, Damson Oil Corporation (Damson) and two of his supervisors, Robert Woodard and Glenn Parker, seeking recovery of damages for personal injuries sustained in an industrial accident which occurred on June 30, 1983 at Damson’s King’s Bayou Gas Plant in Cameron Parish, Louisiana. Plaintiff alleged that his injuries were proximately caused by the intentional legal fault of defendants.
Defendants filed exceptions of no right and/or no cause of action which were overruled. Thereafter, the case proceeded into the discovery phase. After all parties and two former employees of the plant were deposed, defendants filed a motion for summary judgment seeking a dismissal of plaintiff’s suit under the exclusivity provisions of the worker’s compensation act (La. R.S. 23:1032), defendants specifically urging that plaintiff’s injuries were not the result of an intentional act. Plaintiff opposed the motion for summary judgment, submitting two affidavits in opposition: one by Robert D. Oliver, a safety engineer, and his own.
The motion was heard and the trial judge, for written reasons assigned, granted defendants’ motion. A formal judgment dismissing plaintiff’s suit was signed on June 9, 1986. This appeal followed.
The following facts are uncontroverted. On the morning of the accident, plaintiff was the only non-supervisory employee working at the plant. In connection with his duties, he collected the trash from the plant offices and at approximately 8:00 a.m., lit the trash in a 55 gallon drum used for that purpose. Theriot then made his rounds through the plant recording the readings on various gauges.
According to Theriot’s deposition, the following events ensued:
*585 “...then I went back to the barrel around 8:40, and it wasn’t burning, because it had rained. So, I went back in the office, and I got me a small container, and I got a little lean oil in it — went to the pump and got a little lean oil; come back, and I looked in the barrel, and there still wasn’t no fire, no smoke, no nothing. So, I put a little bit in, and I walked away maybe seven feet. And when I got ready to put the container down to move away and throw the match, well, the barrel blew up.”
The unexpectedness of the explosion caused Theriot to splash himself with the lean oil (a substance described as high grade kerosene) remaining in the container. His body was immediately engulfed in flames. He then ran toward the compressor building, the nearest source of water. Robert Woodard, the plant’s maintenance supervisor, observed plaintiff aflame and running across the compound. Woodard immediately went to his aid. By the time Woodard reached Theriot, he had thrown himself down on a wet concrete slab in an attempt to squelch the fire. Woodard began beating the flames with his hands, extinguishing the fire and sustaining burns to his own hands in the process.
In his petition for damages, plaintiff made the following allegations:
“VI.
The accident and injuries to Robert Daniel Theriot were proximately caused through the intentional legal fault of Robert Woodard, Glenn Parker and Damson, its agents, servants and employees, as follows, to-wit:
1. The institution of extremely dangerous procedures for burning trash and other items on the premises, including activities to cover up defendants violation of laws against pollution and OSHA regulations for safety.
2. Failure to provide adequate fire protection clothing for an employee who was required to do dangerous burning with highly combustible fluids.
3. Failure to provide adequate instructions and training for highly dangerous burning operations.
4. Failure to provide adequate fire protection equipment in connection with fire that would surely occur as the result of the above operations.
V.
Defendants continously [sic] committed each of the above acts with the knowledge and belief that the fire that occurred and resulting injuries and/or consequences to Robert Daniel Theriot were certain or substantially certain to follow.”
In the landmark case of Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court determined that the words “intentional act”, found in La.R.S. 23:1032, mean the same as “intentional tort” in reference to civil liability and construed the meaning of intent as follows:
“For these reasons, we construe the legislation under review as providing that the exclusive remedy rule shall be inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did. Several courts of appeal have stated the two prongs of the definition in the conjunctive, thus requiring a plaintiff to prove, in order to recover, that the defendant desired the physical results of his act in every case. Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App. 1980); McGuire v. Honeycutt, 387 So.2d 674 (La.App. 3d Cir.1980); Johnson v. Chicago Mill & Lumber Co., 385 So.2d 878 (La.App. 2d Cir.1980); Courtney v. BASF Wyandotte Corp., 385 So.2d 391 (La.App. 1st Cir.) writ denied 386 So.2d 359 (La.1980); Bourgoyne v. City of Baton Rouge, 380 So.2d 131 (La.App. 1st Cir.1979), cert. denied 382 So.2d 164 (1980); Frazier v. Woodward, 378 So.2d 209 (La.App. 4th Cir.1979); Johnson v. Narcisse, 373 So.2d 207 (La.App. 4th Cir. 1979); Tobin v. Jacobson, 369 So.2d 1161 *586 (La.App. 1st Cir.1979); Guidry v. Aetna Casualty & Surety Company, 359 So.2d 637 (La.App. 1st Cir.) writ denied, 362 So.2d 578 (La.1978). Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. Restatement (Second) of Torts, § 8A, Comment; Prosser, supra, § 8.”
In the case at bar, plaintiff, in brief, concedes that his theory of recovery is based upon the second, meaning of intent in Bazley. The Supreme Court, in reaching its conclusion with regard to the meaning, of “intentional” within the context of Section 1032, considered the definition of criminal intent as stated in La.R.S. 14:10:
“Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is présent whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have advert-. ed to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.”
It is readily apparent that the first meaning of intent in Bazley, supra, is equivalent to specific criminal intent. Just as apparent is the court’s rejection of the wording “reasonably certain” in the definition of general criminal intent for the wording “substantially certain” in the second definition of intent in Bazley. Reasonably can be defined as logically, rationally, sensibly, and within the bounds of possibility; whereas, substantially means reliability, dependability, unfailing and to be depended or relied upon.
In sustaining defendants’ motion for summary judgment, the learned trial judge concluded as follows:
“In looking at the case to determine whether or not there exists facts which could be construed by a reasonable mind to constitute an intentional tort, the court will rely upon the test put forth by the case of Bazley vs. Tortorich 397 So.2d 475 (La.1981). The court said therein:
‘The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.’
• Note that the two prong test is in the disjunctive. If the plaintiff cannot prove this desire existed in the defendant’s mind, he may still prove a constructive intent based on observed circumstances. It was not seriously argued, nor could it be, that the defendant herein or any of its agents ‘desired to bring about’ the injuries to plaintiff. It is the thrust of the plaintiff’s position that the defendant, Damson, through its agents, should have believed the injuries ‘were substantially certain to follow’ from the company’s practices, policies and operations. Why the test in Bazley is in the disjunctive is easily understood. In proving intent, the trier of fact is seldom given an admission articulated by the perpetrator as to why a deed was done. In the realm of criminal law, when intent is an ingredient, its presence may be supplied by proof of activities which lead the trier of fact to believe that the defendant ‘must have’ turned his mind to the consequences of his act. La.R.S. 14:10. The rationale of this second prong of the test was explained by the court in Bazley with these words:
‘If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the results.’ (emphasis added)
At the time of the oral arguments the writer of this opinion made some remarks from the bench to the effect that the difference between gross negligence and an intentional act was a matter of degree. I do not now think that that is *587 the case. Such acts are different in kind. We only treat some extreme negligence as intentional when it is tantamount to an intentional act. With this analysis, there is not [sic] need to weigh facts to conclude that intent, vital to plaintiffs case, is absent from the circumstances surrounding plaintiffs accident.
Plaintiff has made a forceful presentation to support the proposition that the conditions surrounding Mr. Theriot’s work were so fraught with danger that a jury could conclude that it was substantially certain that someone, sometime, would get burned. Plaintiffs counsel argued that we should analogize this case to the general criminal intent of L.R.S. 14:10(2). As an intellectual exercise, plaintiffs argument could be accepted as a natural extension of Bazley. However, the approach suggested by plaintiffs counsel of applying the Bazley test to the risks of an unsafe workplace was discussed by Justice Lemmon in the case of Simoneaux v. E.I. duPont deNemours, 483 So.2d 908 (La.1986). Therein the able judge, at page 913, said:
'.. .When the dispute involves a condition of mind such as knowledge, intent or malice and the decision therefore turns on a question of degree which must be inferred from the entirety of the circumstances, the issues simply should not be decided on the pleadings, no matter how slight the apparent possibility of ultimate success.’
As Judge Lemmon opined, a plaintiff in an industrial accident will almost never prevail on the merits if he is attempting to prove intent through the general policies or working practices of a company unless a liberal construction is given to the exception. Unfortunately, from plaintiff’s point of view, the above quote was taken from the dissent of the Simo-neaux case. Under the current law of Louisiana, predictability cannot be substituted for the test of substantial certainty, if the predictability is general. For instance, stataticians [sic] can predict quite accurately the number of highway deaths each year and so it is a substantial certainty that the manufacture of automobiles will lead to automobile related deaths. Yet, under the Bazley test, it cannot be said that an automobile manufacturer intends that anyone should die.
Plaintiff in the instant case was injured as he burned trash in a barrel. None of the other employees or agents of the defendant knew that plaintiff was engaged in that activity at that time. All of the other facts brought to the court’s attention such as the burning of oil filters in a pit, the absence of fire blankets or the long parade of unsafe practices listed in the affidavit by Robert D. Owen, are all irrelevant. Plaintiff’s injury occurred in one way. No one desired for the plaintiff to be harmed and reasonable minds could not conclude that defendants had engaged in a pattern of activity that would have them believe that plaintiff’s accident was substantial certainty.”
We fully agree with the trial court’s conclusion. Reading the depositions, affidavits, etc., in a light most favorable to plaintiff, the most they establish is that it was a practice, not a policy at the plant to burn trash in 55 gallon drums and to use lean oil to start hard to light fires. However, regardless there is absolutely no evidence supporting the conclusion (except for plaintiff’s conclusionary statements) that defendants established any policies or engaged in any practices knowingly or purposely with the intent of injuring another or that the defendants believed that injury was certain or substantially certain to occur as a result of such practices. Plaintiff’s expert listed nine observed “violations of elementary safety rules”. However, none of these “observed violations” was the direct cause or even an indirect cause of plaintiff’s accident.
“A summary judgment will only be granted if
‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.’
*588 La.C.C.P. Art. 966. On review, an appellate court’s duty is to determine whether the supporting documents presented to the trial court were sufficient to resolve all material factual issues. If so, we must then consider whether any evidence presented by the opposing party tended to show that material facts were still at issue. However, an opposing party seeking to rebut sufficient evidence favoring the motion may not rest merely on allegations and denials contained in his pleadings. Chargois v. Trip-L-Quik, 441 So.2d 45 (La.App. 3rd Cir.1983).”
Davis v. Oilfield Scrap and Equipment Company, 482 So.2d 970 (La.App. 3rd Cir. 1986).
Defendants’ motion for summary judgment was filed after all parties and two additional ex-employees were deposed. The depositions reflect that defendants may have been negligent, but leave no issue as to any material fact concerning an intentional act on the part of defendants. We find defendants are entitled to summary judgment as a matter of law.
The judgment appealed from is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.