812 P.2d 1331

**Harold DOUGLASS,**
**Claimant–Appellant,**

v.

**STATE of New Mexico, REGULATION AND LICENSING DEPARTMENT, a self-insured employer, Respondent–Appellee.**

**No. 12408.**

Court of Appeals of New Mexico.

April 16, 1991.

Certiorari Denied May 22, 1991.

Jane Bloom Yohalem, Carol Oppenheimer, Morton S. Simon, The Law Offices of Simon & Oppenheimer, Santa Fe, for claimant-appellant.

Scott P. Hatcher, Mariana G. Geer, Felker & Ish, P.A., Santa Fe, for respondent-appellee.

David L. Skinner, Christopher W. Nickels, Beall, Pelton, O'Brien & Brown, Albuquerque, for N.M. Defense Lawyers Ass'n, amicus curiae.

William H. Carpenter, Carpenter and Goldberg, Albuquerque, Chairman, amicus Committee, N.M. Trial Lawyers Ass'n, amicus curiae.

Michael B. Browde, Albuquerque, for N.M. Trial Lawyers Ass'n, amicus curiae.

## OPINION

DONNELLY, Judge.

Worker appeals from a judgment denying him benefits under the Workers' Compensation Act. NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1987) (New Act). Five issues are raised on appeal: (1) whether the workers' compensation judge (judge) erred as a matter of law in concluding that worker did not sustain an injury by accident arising out of and in the course of employment; (2) whether worker's stress-induced depression is a "physical impairment" under Section 52–1–24(A); (3) whether the judge's finding that worker was not temporarily totally disabled was supported by substantial evidence; (4) whether worker is entitled to recover medical expenses pursuant to Section 52–1–49, even if he sustained no "impairment" as defined by Section 52–1–24; and (5) whether the judge's failure to find that worker's medical expenses were reasonable and necessary constituted prejudicial error. Other issues raised in the docketing statement but not briefed are deemed abandoned. *See State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We affirm.

### FACTS

Worker was employed with New Mexico State Financial Institutions Division (Division) from 1971 through March 4, 1988. His position as a financial institutions examiner supervisor required that he examine credit unions and thrift institutions for compliance with state regulatory standards. During his period of employment

with the Division, worker was subject to supervision and direction by a number of directors and different management styles. In 1987 a new director took over the Division and shifted its priorities. As a result, a reduction was made in the number of employees under worker's control.

In March 1987 worker started to work evenings and weekends to offset the staff reduction, and experienced anxiety about his ability to perform all of the work assigned to him. By November 1987 worker was graded down in his performance and development plan and sought psychiatric treatment from Dr. James Jaramillo. Dr. Jaramillo observed symptoms of depression, anxiety, confusion, fatigue and disorientation and diagnosed worker as suffering from neuro-chemical depression. The diagnosis was evidenced by blood and urine tests and the success of chemotherapeutic medication. Worker was placed on sick leave in March 1988. Dr. Jaramillo subsequently concluded that worker was in need of intensive psychiatric treatment and he was hospitalized from April 12, 1988, until May 2, 1988, and thereafter treated on an outpatient basis for depression.

Worker sought benefits for temporary total disability and reimbursement of medical expenses. Following a hearing on the merits, the judge entered an order determining that worker's claim was not compensable under the Workers' Compensation Act and that he was not entitled to medical benefits because no compensable claim or disability had been established.

## I. *CLAIM OF MENTAL IMPAIRMENT*

■ Worker argues that the judge erred in concluding he had not sustained a compensable claim under the Workers' Compensation Act.

The New Act defines both "total disability" and "partial disability" in terms of suffering an "impairment." Section 52–1–24, as revised by the legislature, states:

As used in the Workers' Compensation Act ...:

A. "impairment" includes physical impairment, primary mental impairment and secondary mental impairment;

B. "primary mental impairment" means a mental illness arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances, but is not an event in connection with disciplinary, corrective or job evaluation action or cessation of the worker's employment; and

C. "secondary mental impairment" means a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment.

Worker concedes that his injury does not come within the definition of "primary" or "secondary mental impairment" as defined in Section 52–1–24. Worker argues, however, that his work-related, stress-caused neurochemical depression is a "physical impairment" under Section 52–1–24 of the New Act. The judge, however, concluded that the depression was "mental" rather than "physical" and did not constitute a compensable "primary mental impairment" under Section 52–1–24(B) because no single psychologically traumatic event triggered the injury. We agree.

■ Comparison of the current provisions of Section 52–1–24 with the language of the prior statute as interpreted by *Candelaria v. General Electric Co.*, 105 N.M. 167, 730 P.2d 470 (Ct.App.1986), we think evinces a legislative intent to restrict recovery under the Workers' Compensation Act for physical and mental injuries to those types of injuries defined in Section 52–1–24. Considering the plain language of Section 52–1–24, in light of the statute's former provisions and legislative history, we conclude the legislature intended to ex-

clude from coverage claims of mental illness resulting from work-related stress, unaccompanied by either a "psychologically traumatic event that is generally outside of a worker's usual experience," or mental illness "resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment." § 52–1–24(B), (C).

In *Candelaria* we held that stress-induced mental injuries should be treated like any other injury for purposes of receiving benefits under the Act. There, we reasoned that "[i]f both physical trauma leading to psychological disability, and emotional stress, leading to physical disability are compensable, it [also] follows that emotional stress leading to psychological disability comes within the Act." *Id.*, 105 N.M. at 171, 730 P.2d at 474. Following this court's decision in *Candelaria* the legislature substantially rewrote Section 52–1–24. *See Jensen v. New Mexico State Police,* 109 N.M. 626, 788 P.2d 382 (Ct.App.1990).

Section 52–1–24 as rewritten by the legislature in the New Act allows recovery for mental impairment where the impairment is shown to have been caused by a psychologically traumatic event outside of the worker's usual experience, or where the mental illness results from a work-related physical impairment. In adopting the New Act the legislature, *inter alia,* also rewrote the provisions of Sections 52–1–19 (accidental injury), –24 (definition of impairment), –25 (total disability), and –26 (partial disability).

■ In construing the meaning of "physical impairment," our primary concern is to determine and give effect to the intention of the legislature. *Security Escrow Corp. v. State Taxation & Revenue Dep't,* 107 N.M. 540, 760 P.2d 1306 (Ct.App.1988). When construing a statute which has been amended, the amended provisions must be read together with other parts of the act so as to give effect to each part and implement legislative intent. *See State ex rel. Stratton v. Serna,* 109 N.M. 1, 780 P.2d

1148 (1989); *Barela v. Midcon of N.M., Inc.,* 109 N.M. 360, 785 P.2d 271 (Ct.App. 1989).

Under the provisions of the Interim Act (NMSA 1978, Sections 52–1–1 to –68 (Orig. Pamp. and Cum.Supp.1986), "Physical impairment" as defined in Section 52–1–24 (Cum.Supp.1986), did "not include impairment of function due solely to psychological or emotional conditions, including mental stress." Examination of the provisions of Section 52–1–24 of the New Act indicates a legislative intent to revise the definition of "impairment" and to broaden a worker's right to recover for a work-related mental impairment. However, the New Act continues to limit a worker's right to recover benefits for work-related "mental impairment" sustained by a worker to instances which are shown to fall within the perimeters of Section 52–1–24(B) and (C).

Under the New Act, Section 52–1–24 restricts the rights to recover for work-related "mental impairment" to those types of impairment expressly specified in the statute. The findings of the judge determined, among other things, that the reduction of worker's staff in March of 1987 triggered "anxiety about his ability to perform" his work, and that the "stress of [the] increased workload caused him to develop a chemical depression." The judge specifically determined that worker suffered a "neuro-chemical imbalance" that was objectively observable through blood and urine tests and was treatable with chemotherapeutic medication. Based upon the record, the judge properly concluded that worker's clinical depression was mental rather than physical and that the injury and impairment were not covered under the Workers' Compensation Act.

Examination of the provisions of Section 52–1–24 and the Workers' Compensation Act as a whole, we think, indicates the legislature's intent to make gradual, stress-caused *mental* injuries non-compensable under the New Act. *See Jensen v. New Mexico State Police,* 109 N.M. at 629, 788 P.2d at 385. In *Perez v. International*

*Minerals & Chemical Corp.,* 95 N.M. 628, 635, 624 P.2d 1025, 1032 (Ct.App.1981), we stated:

> What is meant by "impairment of a physical function" ...?

*Glover v. Sherman Power Tongs,* 94 N.M. 587, 613 P.2d 729, 735 (Ct.App. 1980), Sutin, J., concurring in the result, set forth the only definition of "physical impairment" noted to date:

> "Giving 'physical impairment' the ordinary meaning as used in common speech, the term denotes a defect or infirmity limiting or making useless a member or limb of the body...."

Despite worker's insistence to the contrary, we think that depression, whether or not traceable to a biochemical origin, is commonly used to denote a "mental illness" as used in Section 52–1–24(B) and (C). Worker argues that his position is supported by *Davis v. Oilfield Scrap & Equipment Co.,* 482 So.2d 970 (La.Ct.App. 1986); *Guillot v. Sentry Insurance Co.,* 472 So.2d 197 (La.Ct.App.1985), and *Leo v. Workmen's Compensation Appeal Board (Borough of Charleroi),* 114 Pa.Commw. 6, 537 A.2d 399 (1988). We find these cases unpersuasive. The courts in these cases were engaged in the same task as we were in *Candelaria*—attempting to determine, in the absence of legislative guidance, when psychological injuries were compensable. In none of these cases did the court consider a specific statute like that contained in the New Act which enunciates definite restrictions on a worker's right to recover for mental impairments. Thus, we conclude the legislative intent surrounding the adoption of the New Act distinguishes our Act from the out-of-state cases relied upon by worker.

We are confident that the legislature was well aware that mental illness is often treated biochemically (which implies a biochemical basis for the disorder) and that medical researchers continually seek medicines to cure or alleviate various forms of mental illness. To carve out from the limitations on recovery for mental impairment all mental illness with a biochemical component, would be to potentially carve out the limitations altogether. The New Act gives no hint of such a purpose. We give the term "mental illness" its common meaning, a meaning also apparently used by mental health professionals, who characterize depression as a "mental disorder." *See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (3d ed. rev. 1987). The New Act distinguishes between "mental impairment" and "physical impairment." § 52–1–24. Depression falls within the ambit of "mental" impairment as defined in Section 52–1–24.

In view of our determination that the judge below correctly ruled that worker suffered a mental rather than a physical impairment, we need not address worker's argument that he was entitled to temporary total disability benefits.

## II. CLAIM OF ENTITLEMENT TO MEDICAL BENEFITS

We next address worker's argument that he is entitled to medical benefits pursuant to Section 52–1–49, even though he sustained no "impairment" as defined by Section 52–1–24. Section 52–1–49(A) entitles a worker to receive medical benefits "[a]fter injury and continuing as long as medical or related treatment is reasonably necessary." Worker contends that recovery of medical expenses is not contingent upon receipt of an award of total or partial disability where there has been proof that the medical bills arose from a work-related accident and are otherwise reasonable and necessary. *Barela v. Midcon of N.M., Inc.* Based on our decision, however, that the legislative intent as expressed in Section 52–1–24 modifies the definition of a compensable "injury" under the New Act and Section 52–1–49, we conclude that medical benefits recoverable under the law are limited to those types of injuries which are defined in Section 52–1–24 and which are not otherwise expressly excluded from coverage.

■ Employer argues that the common thread running through the decisions relating to the right to recover medical benefits requires a showing that worker has suffered a "compensable injury" before medical benefits may be awarded. *See Board of Educ. of Espanola Mun. Schools v. Quintana*, 102 N.M. 433, 697 P.2d 116 (1985); *Salcido v. Transamerica Ins. Group*, 102 N.M. 217, 693 P.2d 583 (1985); *State ex rel. J.P. (Bum) Gibbins, Inc. v. District Court of the Fifth Judicial Dist.*, 65 N.M. 1, 330 P.2d 964 (1958). We agree.

Although Section 52–1–49(A) simply provides for medical benefits "after injury," without defining what type of "injury" is required, our supreme court observed in *State ex rel. J.P. (Bum) Gibbins, Inc.:*

> We are of opinion ... that the medical and surgical treatment which the employee is entitled to receive by Section 59–10–19 of the Workmen's Compensation Act is incidental to and a concomitant part of a compensable injury for which the employer is liable under the Act; *and the employer is only liable for such services where the employee would be entitled to compensation.* [Emphasis added.]

*Id.* at 3, 330 P.2d at 965.

*Nasci v. Frank Paxton Lumber Co.*, 69 N.M. 412, 367 P.2d 913 (1961), applying the policy of liberal construction in favor of the worker and noting that proper medical care can prevent an injury from becoming disabling, held that medical expenses could be recovered in the absence of disability. Any disability, however, resulting from the injury must be compensable under the Act. *Id. Accord Barela v. Midcon of N.M., Inc.* (recovery of medical expenses not contingent upon receipt of an award of total or partial disability where there has been proof that the medical bills arose from a work-related accident and are otherwise reasonable and necessary). No decision suggests that the disability and medical provisions of the Workers' Compensation Act can be divorced in the manner suggested by worker, who proposes that medical benefits can be recoverable even if the injury is of a type for which disability benefits are never recoverable. The Workers' Compensation Act provides fundamentally for a disability compensation scheme. To divorce the medical benefits component of that scheme from the disability scheme we conclude departs from legislative intent and would be to let the tail wag the dog.

Section 52–1–24 evinces a clear legislative policy that, in the absence of a showing that the worker has sustained an impairment as defined in the statute, the Workers' Compensation Act does not apply to mental disorders caused by stress in the workplace. Although the legislature could have simplified our task by defining "injury" in Section 52–1–49, we note that the section has never even been expressly limited by the requirements of Sections 52–1–19 and –28. Application of those limitations to the injuries covered by Section 52–1–49 has been simply a natural consequence of reading the Workers' Compensation Act as a whole. That is all we do today. *See Barela v. Midcon of N.M., Inc.* (requirement imposed explicitly in one section of the Workers' Compensation Act and omitted from a second section should nevertheless be read into the second section).

We think the judge here correctly applied the law to the facts under the New Act. In order for medical benefits to be payable as a result of an injury sustained by the worker within the contemplation of Section 52–1–49, we conclude that the injury must be of such nature that any impairment which may result therefrom would be compensable under the New Act. *See State ex rel. J.P. (Bum) Gibbins, Inc. v. District Court of the Fifth Judicial Dist.* (payment of medical benefits under Workers' Compensation Act is incidental to a finding that employee suffered a compensable injury under the Act); *Bowles v. Los Lunas Schools*, 109 N.M. 100, 781 P.2d 1178 (Ct. App.1989) (medical benefits must be related to compensable injury and be shown to be reasonable and necessary); *City of Littleton v. Schum*, 38 Colo.App. 122, 553 P.2d

399 (1976) (employer is required to pay medical expenses only in cases where he is charged with duty to pay other compensation under the Act). *See also Holford v. Regents of Univ. of Cal.*, 110 N.M. 366, 796 P.2d 259 (Ct.App.1990) (where dependents seek to recover death benefits under Workers' Compensation Act, decedent's original accidental injury must be found to be compensable).

Because we have upheld the judge's determination below that worker did not suffer a compensable injury eligible for medical benefits within the contemplation of the New Act and the evidence herein, we need not address worker's claim that the judge erred in refusing to determine that the medical expenses incurred by worker as a result of stress, anxiety and depression were reasonable and necessary.

### III. *ATTORNEY'S FEES*

■ Lastly, worker argues that we should award attorney's fees for work on appeal and remand for an award of fees for legal work below, pursuant to Section 52–1–54. Unless worker is entitled to compensation or medical benefits, however, an allowance of attorney's fees is improper. *See Phelps Dodge Corp. v. Guerra*, 92 N.M. 47, 582 P.2d 819 (1978).

### IV. *CONCLUSION*

The order denying the award of benefits is affirmed.

IT IS SO ORDERED.

HARTZ, J., concurs.

CHAVEZ, J., (dissenting).

CHAVEZ, Judge (dissenting).

I respectfully dissent. I do not think that the legislative reaction to *Candelaria v. General Elec. Co.*, 105 N.M. 167, 730 P.2d 470 (Ct.App.1986), is as broad as the majority's interpretation of NMSA 1978, Section 52–1–24 (Repl.Pamp.1987). Specifi-

cally, I view Section 52–1–24 as a definitional section limited to eligibility for income benefits. As such, our prior definitions of "accidental injury" for purposes of coming within the Act, including gradual, stress-induced injuries, remain intact.

Under the Act, "impairment" is only used to define total or partial disability in NMSA 1978, Sections 52–1–25 and –26 (Repl.Pamp.1987). "Total disability" and "partial disability," in turn, are used to prescribe eligibility for income benefits under NMSA 1978, Sections 52–1–41 and –42. The plain language of the statute therefore supports worker's contention that Section 52–1–24 relates to income benefits and does not establish which injuries come within the Act as a whole. *See Smith Mach. Corp. v. Hesston, Inc.*, 102 N.M. 245, 694 P.2d 501 (1985) (legislative intent is determined, first and foremost, by reference to the language of the statute).

There is no indication that the legislature intended to equate "impairment" with "injury" for purposes of coming within the Act. As worker points out, the legislature could have precluded all gradual, stress-induced claims from coverage by simply including a definition of "accident" or "injury" in NMSA 1978, Section 52–1–1.1 (Repl. Pamp.1987). This would be consistent with the approach taken in other jurisdictions. *See* 1B Larson, *Workmen's Compensation Law*, 42.23(b) (1991); Fla.Stat. § 440.02(1) (1988); La.Rev.Stat.Ann. § 23.1021(7) (West 1990); Wis.Stat.Ann. § 102.01(c) (West 1990).

Instead, we are asked to interpret a statute that, on its face, appears to strike a balance between the duty of an employer to compensate workers who suffer an on-the-job injury with the need to limit potential fraud and contain costs. The majority has failed to point to anything in the Act that justifies departing from its plain meaning, other than the fact that the 1987 addition of an "impairment" definition in Section 52–1–24 was a response to *Candelaria*. *See Jensen v. New Mexico State Police*, 109 N.M. 626, 788 P.2d 382 (Ct.App.

1990). Even if we assume, for example, that lowering premiums was a central purpose underlying the 1987 amendments, a plain reading of the Act does not threaten a contrary result because (1) it is doubtful that a worker will fake a mental injury where no income benefits are available; and (2) medical benefits must still be reasonable and necessary. In short, there is very limited applicability. Accordingly, worker in this case was entitled to medical benefits because he met the threshold requirement of suffering an accidental injury arising out of and in the course of employment.