895 P.2d 1333

**Richard CHAVEZ, Claimant–Appellant,**

**v.**

**MOUNTAIN STATES CONSTRUCTION, Employer, and Mountain States Mutual Casualty Company, Insurer, Respondents–Appellees.**

**No. 15403.**

Court of Appeals of New Mexico.

April 4, 1995.

Certiorari Granted May 18, 1995.

Elizabeth Gabriel, Albuquerque, for claimant-appellant.

Robert Bruce Collins and Donald C. Clifford, Albuquerque, for respondents-appellees.

## OPINION

BLACK, Judge.

Richard Chavez (Worker) was injured on April 13, 1989, when the truck he was driving rolled over. As a result of the accident, Worker sustained a laceration to his head and a torn rotator cuff. The injury to his rotator cuff left Worker with a permanent physical impairment of thirty percent of the right upper extremity at or above the shoulder. Based on this physical impairment, the Workers' Compensation Judge (WCJ) determined that Worker was forty-eight percent permanently partially disabled. The WCJ also found that Worker suffered from a psychological condition known as Ganser's Syndrome. The WCJ found the mental condition causally related to the same motor vehicle accident that caused the shoulder injury, but not within the statutory definitions of either primary or secondary mental impairment, contained in NMSA 1978, Sections 52–1–24(B) and (C) (Repl.Pamp.1991). Based on the plain meaning of the statutory language, we affirm.

## I. STATUTORY REQUIREMENTS FOR MENTAL IMPAIRMENT

Under the 1987 version of the Workers' Compensation Act, NMSA 1978, Sections 52–1–1 to –70 (Repl.Pamp.1987), recovery for mental impairment was governed by Section 52–1–24.[1] Subsection B of that statute defined primary mental impairment in the following terms:

> B. "primary mental impairment" means a mental illness arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury and consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances, but is not an event in connection with disciplinary, corrective or job evaluation action or cessation of the worker's employment.

Secondary mental impairment was defined by Section 52–1–24(C), which provided:

---

1. Effective January 1, 1991, Section 52–1–24(A) was amended. The provisions of subsections B and C remained unchanged.

C. "secondary mental impairment" means a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment.

## II. *THE DECISION OF THE WCJ*

The WCJ took the somewhat unusual step of filing a memorandum opinion in this case. As we find the factual basis of the WCJ's opinion significant and the logic compelling, we quote from it liberally. The WCJ set forth the factual foundation of his decision as follows:

Ganser's Syndrome is a psychological condition by which a person behaves as if there were severe cognitive malfunctions. Ganser's Syndrome is a psychological condition, and is not related to a physical malady such as dementia or organic brain injury.

In this case it is my determination, based on the evidence presented at trial, that Worker suffers from Ganser's Syndrome. Worker is rendered totally disabled by reason of Ganser's Syndrome. The Ganser's Syndrome is causally related to the work accident of April 13, 1989. In that same accident Worker suffered a laceration to his head, and a torn rotator cuff to his right shoulder.

. . . .

In this case Worker suffered a head laceration which fully resolved. In addition, Worker suffered a torn rotator cuff to his right shoulder which has left him with a 30% permanent physical impairment to the right upper extremity as determined by his physicians. Worker has been rendered partially disabled by reason of this shoulder injury.

The WCJ also considered the statutory definitions of primary and secondary impairment, as well as their application to a psychological disability caused by the accident but unrelated to any physical injuries resulting from the accident:

The Workers' Compensation Act defines primary mental impairment as a mental

illness arising from an accidental injury arising out of and in the course of employment, where there is no physical injury and the accident consists of a psychologically traumatic event that would evoke significant symptoms of distress in a Worker in similar circumstances. Secondary mental impairment is defined as a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment. The Ganser's Syndrome in this case did not derive from a psychologically traumatic event outside of the Worker's usual experience. Nor, can it properly claimed [sic] that the accident would evoke significant symptoms of distress in a Worker in similar circumstances. The Ganser's Syndrome does not derive from a physical impairment caused by an accidental injury, but is rather directly related to the accident of April 13, 1989. It can therefore be seen that Ganser's Syndrome fits neither the definition of primary mental impairment, nor the definition of secondary mental impairment so as to render it a compensable condition under the New Mexico Workers' Compensation Act. While Worker is disabled as a result of the Ganser's Syndrome, the fact that the condition is non-compensable means that the Worker cannot receive compensation as a result of that condition.

The WCJ made several findings of fact relevant to his decision on mental impairment:

16. As a direct and proximate result of the accident of April 13, 1989, to a reasonable medical probability, Worker suffered an injury to the head and right shoulder. The nature of the injury is laceration of the head and torn rotator cuff of the right shoulder. Worker also suffers from Ganser's Syndrome.

17. Ganser's Syndrome is causally related to the April 13, 1989 accident, but is not a primary mental impairment within the Act, nor is it secondary to a physical injury.

. . . .

30. Worker's disability from Ganser's Syndrome is causally related to the accident of April 13, 1989.

. . . .

31. Worker is unable to return to his former job.

32. Worker would not likely benefit from vocational rehabilitation. This is because of the Ganser's Syndrome.

At least one of the WCJ's conclusions of law also relates to the nature of the disability caused by the Ganser's Syndrome:

16. Worker is not entitled to weekly benefits based on Ganser's Syndrome, as that condition fits neither primary, nor secondary impairment definitions so as to render it compensable.

## III. DISCUSSION

■■■ Under Section 52–1–24(B), a worker can recover for primary mental impairment only "when the accidental injury involves no physical injury." The present case clearly involved a physical injury, for which compensation benefits were awarded. Worker's injury therefore does not fall within the definition of primary mental impairment. Moreover, the WCJ expressly recognized that the accidental injury "in this case did not derive from a psychologically traumatic event outside of the Worker's usual experience." There is also no evidence in the record to show that Worker was predisposed to such a psychological disorder or that such an accident "would evoke significant symptoms of distress in a worker in similar circumstances." Section 52–1–24(B). These factors provide a second basis for the WCJ's conclusion that Worker's Ganser's Syndrome is not within the statutory definition of a primary mental impairment.

■■■ In order to recover for a secondary mental impairment the mental illness must be the result of a physical impairment. We agree with Worker that it was not necessary for him to prove the Ganser's Syndrome was caused by a physical injury to the brain.

Under the clear language of Section 52–1–24(C), however, Worker was required to prove that the Ganser's Syndrome resulted from a physical impairment of some nature. After reviewing the evidence, the WCJ concluded, "[t]he Ganser's Syndrome does not derive from a physical impairment caused by an accidental injury, but is rather directly related to the accident of April 13, 1989." Worker does not argue that there is not substantial evidence to support the WCJ's decision but rather that there was evidence from which the WCJ could have concluded that the Ganser's Syndrome was the result of a physical impairment caused by the accident. However, the fact that there is other evidence upon which a lower court could have reached a different conclusion does not make its decision erroneous. *Jay Walton Enters. v. Rio Grande Oil Co.*, 106 N.M. 55, 60, 738 P.2d 927, 932 (Ct.App.), *cert. denied*, 106 N.M. 7, 738 P.2d 125 (1987). Here, there is substantial evidence that Worker's injury was not the result of a physical impairment and thus is not within the definition of a secondary mental impairment under Section 52–1–24(C).

■■■ "The chief aim of statutory construction is to give effect to the intent of the legislature." *Roth v. Thompson*, 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992). This standard "ordinarily requires [the court] to determine the legislative intent primarily from the language used in the statute as a whole. When the words of the statute are free from ambiguity and doubt, resort should not be undertaken to any other means of interpretation." *State ex rel. Stratton v. Roswell Indep. Sch.*, 111 N.M. 495, 500, 806 P.2d 1085, 1090 (Ct.App.1991) (citation omitted). "Section 52–1–24 restricts the rights to recover for work-related 'mental impairment' to those types of impairment expressly specified in the statute." *Douglass v. State, Regulation & Licensing Dep't*, 112 N.M. 183, 186, 812 P.2d 1331, 1334 (Ct.App.), *cert. denied*, 112 N.M. 77, 811 P.2d 575 (1991). In the present case the definitions of mental impairment are clear, so we do not look to

any other source to determine legislative intent.[2]

The decision of the WCJ is affirmed.

IT IS SO ORDERED.

FLORES, J., concurs.

DONNELLY, J., files dissenting opinion.

DONNELLY, Judge (Dissenting).

I respectfully dissent. I would reverse the decision of the workers' compensation judge (WCJ) which held that Worker was not entitled to recover workers' compensation benefits for his mental disability caused by his work-related truck accident.

In this case Worker sustained a physical injury that rendered him forty-eight percent disabled, and he also sustained a totally disabling mental disability which the WCJ found to be unrelated to his physical injury. The WCJ found that both Worker's physical and mental disabilities were caused by his work-related accident which occurred when the truck he was driving veered off the highway and turned over. The WCJ held, however, that Worker was not entitled to any recovery for his mental disability sustained as a result of the accident, because his mental condition (Ganser's Syndrome) was not a "primary mental impairment" nor a "secondary mental impairment" within the meaning of NMSA 1978, Section 52–1–24(B) or (C) (Repl.Pamp.1991) (effective until January 1, 1991).

The dispositive question presented by this appeal is whether Worker, who was found to be totally disabled by reason of his work-related injury which caused his mental impairment, must be denied any recovery for his mental impairment if he also received a *"physical injury"* in the same accident. The majority has interpreted Section 52–1–24 to mandate this result even though the WCJ

found that Worker's mental disability was not caused by any of his physical injuries. I believe closer examination of Section 52–1–24(B), when read together with other portions of the same statute, renders denial of benefits for Worker's mental disability improper.

The WCJ was clearly troubled by the wording of Section 52–1–24, and noted in his memorandum decision that if the statute is interpreted as excluding any recovery for mental disability when the mental disability is shown to have been accompanied by a "physical injury," this results in indulging in a "legal fiction" that Worker is only partially disabled, not completely disabled. The WCJ accompanied his findings of fact and conclusions of law with a memorandum decision, which observed, among other things:

In this case Worker suffered a head laceration which fully resolved. In addition, Worker suffered a torn rotator cuff to his right shoulder which has left him with a 30% permanent physical impairment to the right upper extremity as determined by his physicians. Worker has been rendered partially disabled by reason of this shoulder injury. *The determination of partial disability assumes a Worker who does not suffer Ganser's Syndrome, but is otherwise situated exactly the same as this Worker.* Given that situation, Worker would be physically able to perform other jobs other than the truck driving job.... It is only the Ganser's Syndrome which renders this Worker totally disabled.

*Because of the existence of the Ganser's Syndrome, which is non-compensable, this Court must engage in the legal fiction that Worker does not suffer from Ganser's Syndrome in order to determine the extent of partial disability.* [Emphasis added.]

I believe that the WCJ and the majority of this Court erred in interpreting Section 52–

2. We also note that the 1987 Act, which we construe in this case, was the first to explicitly abolish the long held canon of construction that the Workers' Compensation Act was to be construed liberally in favor of the worker. *See Fitzgerald v. Open Hands*, 115 N.M. 210, 213, 848

P.2d 1137, 1140 (Ct.App.1993). We recognize that the legislative intent the dissent attributes to Section 52–1–24(B) and (C) may be more consistent with the original goals of workers' compensation, but we do not feel free to ignore the clear dictates of the legislature.

1-24(B), and in denying Worker's right of recovery for "primary mental impairment." The WCJ found that because the accident that caused the mental disability also caused a "physical injury," Worker's Ganser's Syndrome was non-compensable, and thus was outside the statutory definition of "primary mental impairment."

There are two different ways in which the term "primary mental impairment" in Section 52-1-24(B) may be interpreted. The majority's interpretation construes the words "when the accidental injury involves no physical injury," contained in Subsection B, to mean that if Worker sustained a work-related mental illness not caused by any physical injury, he is precluded from recovering *any* workers' compensation benefits resulting from his mental disability if Worker also sustained a physical injury in the same accident. *See* § 52-1-24(B). For example, the interpretation applied by the majority means that if Worker is involved in a work-related motor vehicle accident which results in severe psychological impairment that was not caused by a physical injury, no recovery is permitted if Worker also received any physical injury in the same accident, even a minor physical injury.

Reading Section 52-1-24 in its entirety, I do not believe the legislature intended such a harsh result. Reading each of the subsections of the statute together reveals a different legislative intent. In the instant case, the mental impairment suffered by Worker was found by the WCJ to "not [have derived] from a *physical* impairment caused by an accidental injury." Contrary to the interpretation applied by the majority, I believe the legislature intended that the language of Section 52-1-24(B) would not preclude recovery for a mental disability simply because a worker also sustained a physical injury in the same accident *so long as the physical injury did not cause the mental injury*. Thus, it is apparent that the words *"when the accidental injury involves no physical injury,"* contained in the definition of "primary mental impairment," were intended to mean that a worker is entitled to recover under Section 52-1-24(B) for a work-related mental disability which satisfies the other requirements of the statute if the mental disability was not *caused* by, or derived from, a physical injury.

Examination of Section 52-1-24 in its entirety indicates that the legislature intended to divide mental impairment into two classifications: "primary" and "secondary" impairment. Under Section 52-1-24(C), a worker may recover for a "secondary mental impairment" if the mental illness meets the other statutory requirements and is shown to have resulted from a physical impairment caused by a work-related physical injury. In contrast, under Subsection B of the statute, a worker may recover for a "primary mental impairment" caused by a work-related accident if the mental illness was not caused by a physical injury. *See, e.g., Jensen v. New Mexico State Police,* 109 N.M. 626, 629, 788 P.2d 382, 385 (Ct.App.) ("Section 52-1-24(B) reflects a legislative intent to limit primary impairment to sudden, emotion-provoking events of a catastrophic nature ... as opposed to gradual, progressive stress-producing causes...."), *cert. denied,* 109 N.M. 563, 787 P.2d 1246 (1990).

When the statute is read in its entirety, the literal interpretation adopted by the majority results in an overly technical result and defeats the design of the statute. *See Coslett v. Third Street Grocery,* 117 N.M. 727, 730, 876 P.2d 656, 659 (Ct.App.) (court is not compelled to adopt literal interpretation when context of statute suggests an alternative interpretation which better advances purposes of legislation), *cert. denied,* 117 N.M. 802, 877 P.2d 1105 (1994); *see also Douglass v. State, Regulation & Licensing Dep't,* 112 N.M. 183, 185-86, 812 P.2d 1331, 1333-34 (Ct.App.) (statute must be read together with other parts of the act so as to give effect to each part and implement legislative intent), *cert. denied,* 112 N.M. 77, 811 P.2d 575 (1991).

Because the legislature expressly provided in Section 52-1-24(B) that a worker is entitled to compensation for mental disability resulting from a work-related accident unac-

companied by a physical injury, and provided in Subsection C for recovery for a mental disability where a worker sustained a mental injury shown to have resulted from a work-related *physical impairment,* it is incongruous to interpret the statute as denying a worker a right of recovery for a mental disability which has been shown to have been caused by a traumatic work-related accident and which would have been otherwise compensable except for the fact that it was also accompanied by any physical injury, even where, as occurred here, Worker suffered a "physical injury" which the WCJ found to be totally unrelated to Worker's mental disability. *See Lopez v. Employment Sec. Div.,* 111 N.M. 104, 106, 802 P.2d 9, 11 (1990) ("Enactments of the legislature are to be interpreted to accord with common sense and reason."); *Gonzales v. Lovington Pub. Sch.,* 109 N.M. 365, 370, 785 P.2d 276, 281 (Ct.App.1989) (appellate court will not adopt interpretation of statute that produces an absurd result), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1990); *see also Coslett,* 117 N.M. at 730, 876 P.2d at 659 (court not bound by literal interpretation where alternative interpretation in keeping with legislative intent).

I respectfully submit that Worker's mental condition qualified as a *"primary mental impairment"* under Section 52–1–24(B), and that the statutory interpretation applied by the majority and the WCJ misinterprets the definition of "primary mental impairment."

The WCJ's memorandum decision also noted that Worker's

> Ganser's Syndrome ... did not derive from a psychologically traumatic event outside of the Worker's usual experience. Nor, can it properly [be] claimed that the accident would evoke significant symptoms of distress in a Worker in similar circumstances. The Ganser's Syndrome does not derive from a physical impairment caused by an accidental injury, but is rather directly related to the [truck] accident....

The majority also found the above determination to constitute "a second basis for the WCJ's conclusion that Worker's Ganser's Syndrome is not within the statutory definition of a primary mental impairment," op. at

795, 895 P.2d at 1336, and that there was no evidence to show that the accident in question "would evoke significant symptoms of distress in a worker in similar circumstances." Section 52–1–24(B). This conclusion, when considered in light of the facts of the instant case, appears erroneous. It is uncontradicted that Worker was in a serious motor vehicle accident which resulted in serious physical and mental injuries. This certainly constitutes sufficient evidence to give rise to a reasonable inference that others may sustain physical and mental injuries if they experienced a similar accident. I believe the WCJ and the majority have departed from the well-established rule that a worker is entitled to recover for a work-related disability if the accident aggravated a prior condition or if the injury caused the disability even though the worker may have been predisposed to this type of physical or mental condition. In *Holford v. Regents of University of California, Los Alamos National Laboratory,* 110 N.M. 366, 368, 796 P.2d 259, 261 (Ct.App.), *cert. denied,* 110 N.M. 330, 795 P.2d 1022 (1990), this Court held that under Section 52–1–24(B) a worker *may recover* for a "primary mental impairment" if the worker establishes that his or her mental illness was caused by a psychologically traumatic event that is outside the worker's normal experience, the traumatic event would evoke significant symptoms of distress in a worker in similar circumstances, and the traumatic event does not arise out of disciplinary, corrective or job evaluation action, or the cessation of the worker's employment.

Because I believe the decision of the WCJ was based on an erroneous reading of Section 52–1–24(B), I would reverse the decision of the WCJ and remand for further proceedings. *Mehau v. Reed,* 76 Hawai'i 101, 869 P.2d 1320, 1326 (1994) ("The construction of a statute is a question of law which the court reviews under the right/wrong standard."); *see also Hughes v. Hughes,* 91 N.M. 339, 347, 573 P.2d 1194, 1202 (1978) (trial court's findings based on error or misapprehension of law are not binding on appeal).